580 So.2d 1029 (1991)
Huey P. MORRIS and Susie T. Morris, Plaintiffs-Appellants,
v.
PEOPLE'S BANK & TRUST COMPANY OF NATCHITOCHES, Louisiana; People's Bancshares of Natchitoches, Inc.; Sam J. Friedman; Peter E. Cloutier, Jr.; Gary S. DeBlieux; Hertzog DeBlieux; Walter C. Jones; John A. Luster; G.F. Thomas, Jr.; Lovan B. Thomas; R. Stacy Williams; and Kenneth D. McCoy, Jr., Defendants-Appellees.
No. 89-1242.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
Rehearing Denied June 24, 1991.
*1030 Cooper & Pierson, Mary O. Pierson, Baton Rouge, Cleveland, Barrios, Kingsdorf & Casteix, Carl W. Cleveland, New Orleans, for plaintiffs-appellants.
McCoy & Hawthorne, Kenneth D. McCoy, Jr., Natchitoches, Willie D. Maynor, Baton Rouge, Watson, Murchison, Crews, Arthur & Corkern, Daniel T. Murchison, Natchitoches, Mayer Smith & Roberts, Caldwell Roberts, Shreveport, Hargrove, Guyton, Ramey & Barlow, Billy R.
*1031 Pesnell, Shreveport, Luster, Conine & Brunson, John W. Luster, Natchitoches, Cook, Yancey, King & Galloway, Herschel Richard, Jr., Shreveport, for defendants-appellees.
Before DOMENGEAUX, C.J., and GUIDRY and LABORDE, JJ.
DOMENGEAUX, Chief Judge.
Huey P. Morris and his wife, Susie T. Morris, brought this suit for specific performance and damages against People's Bank and Trust Company of Natchitoches (People's Bank), People's Bancshares of Natchitoches, Inc. (Bancshares), certain directors of People's Bank and Bancshares,[1] and Kenneth D. McCoy, Jr. Morris' claims against McCoy and Sam J. Friedman were dismissed via summary judgment and his claims against People's Bank, Bancshares, and the remaining directors were dismissed pursuant to exceptions of no cause of action.
In this appeal, Morris contends the trial court erred in sustaining the defendants' exceptions of no cause of action and in granting McCoy's motion for summary judgment. In the related case of the same caption, Court of Appeal No. 90-1239, Morris contends the trial court erred in granting Friedman's motion for summary judgment. Our decision in that case is rendered this date and is reported at 580 So.2d 1037 (La.App.3d Cir.1991).

FACTS
Morris' petition asserts the following facts which, for purposes of reviewing defendants' exceptions of no cause of action, we presume to be true. In 1984, Huey P. Morris was offered employment as president and chief executive officer of People's Bank. Sam Friedman recruited Morris and negotiated the terms of his employment with the Bank. Friedman was the Bank's majority shareholder. Ultimately, Morris entered into an employment contract with the Bank which provided that Morris would serve as president and chief executive officer for a three year period. The contract was drafted by Kenneth D. McCoy and contained the following stock purchase provision which is the subject of this litigation:
9. Employee obligations and restrictions.

(a) Employee recognizes and agrees that, by virtue of the employment granted under this Agreement, he will have and will be offered numerous opportunities to acquire shares of stock in the Bank or Holding Company which controls the Bank. Upon the effective date of this Agreement, the Employee owns no shares of stock in the Bank, and there is presently no Holding Company in control of the Bank. Upon the termination or expiration of this Agreement, for any reason whatsoever, the Employee shall be obligated to sell to the Bank or its designee all shares of stock in the Bank or in any Holding Company which controls the Bank, which the Employee shall hold or control, directly or indirectly, at a price equal to the average per share price of the three (3) immediately preceding bona fide sales registered upon the stock transfer books of the Bank, or the Holding Company, or at a price equal to the purchase price paid by Employee plus any increase in book value of that purchase during the term of this agreement whichever is greater, and the Employee shall not be free to sell or transfer such shares to any third party unless the Bank or its designee shall fail to purchase the same within a period of sixty (60) days after the termination of this Agreement. However, the Bank shall be unconditionally obligated to purchase the stock in accordance with this paragraph.
(b) Employee's spouse, Susie T. Morris, enters into this Agreement solely for the purpose of binding herself to the provisions of the aforesaid paragraph, and to agree that she will in consideration of the employment herein secured by her spouse, transfer to the Bank or its designee, all the right, title and interest *1032 she may have under the laws of the State of Louisiana in and to all shares of stock in the Bank or the Holding Company, pursuant to the aforesaid paragraph, in the event of termination or expiration of this Agreement for any cause whatsoever.
(c) Employee represents and warrants to the Bank that: (i) Employee is under no contractual or other restriction or obligation compliance with which is inconsistent with the execution of this Agreement, the performance of obligations hereunder or the rights of the Bank hereunder; and (ii) Employee is under no physical or mental disability that would hinder the full performance of his obligations under this Agreement.
Essentially, Morris and People's Bank agreed that at the termination of Morris' employment, he would sell, and the Bank would purchase, any shares of stock Morris owned in the Bank or its holding company at a price no less than that which Morris originally paid for the stock.
At the time of Morris' employment it was anticipated by all parties that a holding company would soon be formed which would own all of the stock of the Bank. In addition to his duties as president and chief executive officer of the Bank, Morris also served as president and chief executive officer of the holding company after its formation until the termination of his employment by resignation. The stockholders of the Bank received holding company stock in exchange for Bank stock when the holding company was formed. The holding company owns the stock of the Bank.
During the course of his employment with People's Bank, Morris purchased 48,265 shares of stock in Bancshares. He paid over $440,000.00 for these shares. In 1987, Morris declared his intent to resign from People's Bank and offered to sell his stock to the Bank. The Bank refused to purchase the stock. Bancshares likewise refused to purchase the stock. Sam Friedman orally agreed to purchase the stock but never actually did so. In April of 1988, Morris resigned as president and chief executive officer of People's Bank and Bancshares.
Morris filed suit against People's Bank, Bancshares, and certain directors alleging breach of contract, violations of Louisiana securities laws, negligent misrepresentation, and detrimental reliance. Morris raised an additional cause of action against Sam Friedman, breach of an oral agreement to purchase securities. Against Kenneth McCoy, Morris asserted a claim for legal malpractice as McCoy was the attorney who drafted the employment contract between Morris and People's Bank.[2]

PEOPLE'S BANK
The Louisiana Supreme Court in Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975), explained the purpose and function of an exception of no cause of action:
The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition. The correctness of the well-pleaded allegations of fact is conceded, the issue is whether the face of the petition presents a case which legally entitles the mover to the redress sought. It is the sufficiency of the petition or motion in law which is put at issue by the exception....
If a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled....
In considering a petition against which an exception of no cause of action has been raised, every reasonable interpretation must be accorded its language in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence....

*1033 Pleadings must be reasonably construed so as to afford litigants their day in court, to arrive at the truth and to avoid a miscarriage of justice.... [Citations omitted.]
310 So.2d at 96; see also City Stores Co. v. NEI Corp., 357 So.2d 1364 (La.App. 4th Cir.1978).
Morris asserts in his petition a cause of action for detrimental reliance. La.C.C. art. 1967 changed Louisiana law by incorporating detrimental reliance as a basis for the enforceability of obligations. La.C.C. art. 1967, comment (a); Kethley v. Draughon Business College, 535 So.2d 502 (La.App.2d Cir.1988). Under Article 1967, a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment. La.C.C. art. 1967, comment (d). The court may grant either specific performance or damages to the disappointed promisee. Kethley. The article provides:
Art. 1967. Cause defined; detrimental reliance
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The doctrine of detrimental reliance was codified in 1985, but it is not actually new in Louisiana. Our courts have long recognized the German theory of culpa in contrahendo, which permits a plaintiff to recover damages which result from his change of position caused by reliance upon an unenforceable contract. See Note, ObligationsMeasure of Recovery for Change of Position Under Unenforceable ContractCulpa in Contrahendo, 25 Tul.L. Rev. 133 (1950), and cases cited therein.
Nevertheless, the fact that detrimental reliance is now part of our Civil Code is significant. It has been suggested that Article 1967 will allow Louisiana courts to "start their analysis of a promise from the question of the harm that it may have caused instead of what the promisor is getting for his promise or what his motive was for making it." A Student Symposium, The 1984 Revision of the Louisiana Civil Code's Articles on Obligations: Detrimental Reliance, 45 La.L.Rev. 747, 769 (1985).
The language of Article 1967 indicates that a cause of action for detrimental reliance will arise primarily under contract law. "[I]ts principal utility will be in handling defective contracts. These agreements are not legal contracts because one of the elements of contracts is missingcapacity, consent, cause, or objector because they violate a law of public policy." A Student Symposium, 45 La.L.Rev. at 767.
In Coleman v. Bossier City, 305 So.2d 444 (La.1974), the Supreme Court discussed reliance damages in the context of culpa in contrahendo. The court declined to apply the doctrine, finding instead recovery on the basis of unjustified enrichment. The opinion is significant, however, because it raised the question of whether a promisee would be protected when his reliance damages could not be measured by the value of benefits conferred on the other party"that is, when the contractual fault did not correspond to unjust enrichment." Herman, Detrimental Reliance in Louisiana LawPast, Present, and Future (?): The Code Drafter's Perspective, 58 Tul.L. Rev. 707, 746 (1984).
Article 1967 answers that question clearly when it requires the promisee's reliance to be reasonable. People's Bank contends Morris could not have reasonably relied on an illegal provision in the contract. The Bank relies primarily on the case of A Better Place, Inc. v. Giani Investment Co., 445 So.2d 728 (La.1984), in support of this proposition. Giani involved monies due on the sale of certain objects alleged to be illegal drug paraphernalia. The court chose not to enforce the contra bonos mores obligation to pay for such goods.
The Giani decision did not address the reasonableness of the promisee's reliance, *1034 such as his good faith, and we do not believe it is applicable to the case before us. Morris alleged in his petition that the Bank proposed the reciprocal stock purchase obligation and the Bank's retained attorney drafted a contractual provision to that effect. The Bank refused to honor this provision, and bases this exception of no cause of action on the contention that the provision is unenforceable as it would violate La.R.S. 6:416.[3]
Concerning the illegality of the Bank's repurchase obligation, Morris urges his own good faith; in fact, Morris has consistently denied the provision is illegal and continues to advocate that position on appeal. His allegation of good faith, along with the other factual assertions made in the petition, constitute sufficient well-pleaded facts to state a cause of action under Article 1967.
Similarly, in Moore v. Smith, 521 So.2d 742 (La.App.2d Cir.1988), the promisee, Moore, was in good faith when she entered into an agreement with Smith, her stepfather, whereby she agreed to renounce her interest in her mother's succession in exchange for Smith's promise to leave the succession property to her upon his death. The entire agreement was null, as it involved "an intricate tangle of prohibited acts." 521 So.2d at 743. Yet Moore was allowed to recover damages for detrimental reliance. The court reasoned:
If the plaintiffs knew that the contract was prohibited, they would not be allowed to assert their wrong doing to claim a benefit from it. However, the record is completely void of evidence to support the supposition that the plaintiffs knowingly embarked on an illegal scheme. In fact, during the negotiations, Mr. Smith was represented by counsel who drew up the documents and was perhaps aware of the contract; the plaintiffs were not represented. If anyone should be charged with knowledge that article 1976 would invalidate the transaction, it is Mr. Smith. This is clearly not a case of the plaintiffs "alleging their own turpitude."
521 So.2d at 744.
Similarly, in A. V. Smith Construction Co., Inc. v. Maryland Casualty Co., 450 So.2d 39 (La.App.3d Cir.1984), this court allowed recovery for unjust enrichment even though the contract between the parties was void malum prohibitum. We held that because the parties were in good faith, the contractor was allowed to recover in quantum meruit.
In the case before us, Morris contends he was induced to purchase a large amount of stock because he was promised that upon his resignation all his shares would be repurchased at a price no less than he initially paid for the shares. Morris was presented with a no-lose situation. Presuming, for purposes of this exception, the veracity of Morris' allegations, we believe a cause of action for detrimental reliance has been sufficiently asserted, and the exception filed by People's Bank must be overruled.
As a separate cause of action, Morris contends the Bank breached its contract with him to purchase his Bancshares stock at the time of his resignation. The Bank refused to honor its obligation under the contract, believing such purchase would violate La.R.S. 6:416. Section 416 prohibits a state bank from purchasing or owning, directly or indirectly, its own stock. We decline to characterize the ownership of Bancshares stock as the indirect ownership of People's Bank stock. We know of no provision which prohibits a bank from owning stock in a holding company which happens to own a controlling interest in the bank. Furthermore, considering the fact that the parties refer to the contractual provision at issue as a repurchase agreement, we note that La.R.S. 6:242A(14) and *1035 6:422A specifically allow and authorize a bank to enter into repurchase agreements, although the term "repurchase agreement" is not defined therein. Therefore, we believe Morris has stated a cause of action for breach of contract.
Morris' remaining assertions concerning negligent misrepresentation and violations of Louisiana securities laws are not supported by the facts alleged in the petition. The necessary elements of a cause of action for negligent misrepresentation are not alleged. See Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979). Nor are the bank securities at issue herein subject to the Louisiana Blue Sky Law. See La.R.S. 6:242A(11) and 51:701 et seq. However, because the petition states a cause of action "as to any ground or portion of the demand," we find the trial court erred in sustaining the exception filed by People's Bank. (See Hero Lands.)

BANCSHARES
In his petition, Morris asserts the same causes of action against Bancshares as against the Bank. We note, however, that Bancshares was not a party to the employment contract between Morris and the Bank. In fact, Bancshares was not even in existence at the time the contract was signed. Morris contends, however, in Paragraph 7H of his petition, that when Bancshares was formed, it "acknowledged, ratified, assumed and became bound by the terms and conditions of the employment contract." Morris must prove this allegation at the time of trial.
For purposes of Bancshares' exception of no cause of action, however, we will assume that Bancshares did in fact assume the obligations of the employment contract. Given that assumption, we believe Morris has a cause of action against Bancshares for detrimental reliance and breach of contract for the same reasons discussed above. Likewise, we do not believe Morris pleaded sufficient facts to support his claims for negligent misrepresentation and violations of Louisiana securities laws.
Concerning the legality of a purchase by Bancshares of its own stock, we find no prohibition in the law to such a transaction. In fact, La.R.S. 6:517(B)(1)(a) specifically provides that a holding company can purchase its own shares and such purchase is excepted from the minority stockholders' rights outlined in Section 517(A). We find further authority for a holding company's right to own its own shares in Clinton and Ayres, Advantages and Disadvantages of Formation of a Bank Holding Company in Louisiana, 31 La.Bar J. 5, 278 (1984).

THE DIRECTORS
Morris asserts four causes of action against the directors of People's Bank, excluding Sam Friedman: breach of contract, violations of Louisiana securities laws, negligent misrepresentation, and detrimental reliance. Morris alleges no facts sufficient to support personal liability on the part of the directors for the Bank's alleged breach of contract. Morris does not contend that the directors were parties to the employment contract or that they were otherwise obligated personally to purchase any of his stock. Likewise Morris does not sufficiently plead facts which give rise to the applicability of Louisiana securities regulations; the directors are not alleged to be sellers of the securities purchased by Morris and the securities at issue are not subject to state securities laws. La.R.S. 51:701 et seq.
Turning to the claims for negligent misrepresentation and detrimental reliance, we have scrutinized the plaintiffs' petition and find no facts to support either cause of action against the directors who were not parties to the employment contract and did not negotiate with Morris as to the terms thereof. There are no allegations of a fiduciary relationship between Morris and the directors, or of any representations made by the directors to Morris. Actually, the petition is unclear as to whether these causes of action were intended to be asserted against any defendants other than People's Bank, Bancshares, and Sam Friedman. Therefore, we find the exceptions of no cause of action filed by Peter E. Cloutier, Jr.; Gary S. DeBlieux; Hertzog DeBlieux; Walter C. Jones; John A. Luster; G.F. Thomas, Jr.; Lovan B. Thomas; and R. Stacy Williams were properly maintained.

*1036 FRIEDMAN
Morris asserts the same causes of action against Sam J. Friedman, the majority shareholder of People's Bank and later Bancshares, as against the other directors. However, Morris has pleaded certain facts concerning Friedman alone which give rise to a cause of action for detrimental reliance. We quote from the petition:
17.
FOURTH CAUSE OF ACTIONNEGLIGENT MISREPRESENTATION/DETRIMENTAL RELIANCE
The Bank, Bancshares and Friedman, individually as a representative of both of these institutions, consistently and repeatedly encouraged and induced petitioner to purchase stock in the Bank and in Bancshares after it was formed. Friedman persistently represented to petitioner that Friedman would be bringing new Directors to the organizations who would purchase large blocks of stock acquired by petitioner or, failing that, that Friedman himself would reacquire the stock from petitioner. Relying on the representations made by Friedman, petitioner invested his life savings, a sum in excess of Four Hundred Forty Thousand Dollars ($440,000.00), in Bancshares stock. Absent the reacquisition obligation contained in the Employment Contract and the representations made by Friedman and the other defendants, petitioner would not have acquired any shares in Bancshares other than "qualifying shares" necessary for petitioner to maintain a seat on the Board of Directors of the organizations.
These facts, which we presume to be true for purposes of reviewing this exception, set forth a case for detrimental reliance. La.C.C. art. 1967 does not require the existence of a formal, valid, or enforceable contract in order for detrimental reliance to occur. The existence of a promise, and reasonable detrimental reliance on that promise, are the only requirements:
[T]he basis of detrimental reliance is not the intent to be bound, since detrimental reliance is not really contractual in nature. It is based on the idea that a person should not harm another person by making promises that he will not keep. The question is not whether the promisor really intended to perform what he promised, rather it is whether the promise was made in such a manner that the promisor knew or should have known that the promisee would rely upon it, and if so, whether the promisee has in fact reasonably relied upon the promise and been damaged thereby. When the promisee can prove all of these elements he has shown that the promisor has dealt him an injustice, and the court should be free to remedy the injustice suffered by the promisee.
A Student Symposium, 45 La.L.Rev. at 765-766. Of course, as the cited comments illustrate, Morris will have a heavy burden of proof once his case proceeds to trial on the merits, but his cause of action was established and the trial court's ruling on Friedman's exception must be reversed. In as much as Morris has not sufficiently pleaded the existence of a contract enforceable against Friedman (see case number 90-1239 and the remaining discussion of this section) Morris is only entitled upon remand to recover any damages he may be able to prove; he is not entitled to seek specific performance of the alleged contracts. Art. 1967 allows recovery to be limited "to expenses incurred or damages suffered," and we find the petition only supports a cause of action under Art. 1967 to the extent of that limitation.
Concerning the remaining causes of action asserted against Friedmanbreach of contract, violations of securities laws, and negligent misrepresentationwe find the petition void of any allegations to support those causes of action for the reasons discussed in the section of this opinion entitled "The Directors."

McCOY
In his petition, Morris asserts a cause of action against Kenneth McCoy for legal malpractice. McCoy was hired by the Bank to draft the employment contract at issue herein. Deposition testimony reveals that McCoy was retained by the Bank and dealt exclusively with the Bank in drafting *1037 the contract. McCoy had no contact with Morris, was not retained or paid by Morris, and did not even know that Morris was the intended employee until the contract was drafted in final form. Morris testified that he believed McCoy would protect his interests as he was retained by the Bank to draft a valid and enforceable agreement. Morris' subjective belief does not create an attorney-client relationship that would not otherwise exist. Because this deposition testimony presents no genuine issue of material fact, we believe the trial court properly granted McCoy's motion for summary judgment, regardless of the validity of the contractual provision which pertains to the Bank's repurchase of Morris' stock.
In Penalber v. Blount, 550 So.2d 577 (La.1989), the Supreme Court reaffirmed the majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf:
A non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client.
550 So.2d at 581.
Although Morris apparently does not believe he was in an adversarial relationship with People's Bank, and therefore McCoy was hired to represent the interest of both parties, we believe the nature of the employment agreement and the reciprocal obligations contained in the employment contract support the conclusion that there was no attorney-client relationship between McCoy and Morris. The facts are not disputed; rather, the parties disagree on the characterization of their relationship. The trial judge correctly concluded, as a matter of law, that McCoy and Morris were not in an attorney-client relationship, and summary judgment was properly granted in favor of McCoy.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded. That portion of the judgment sustaining the exceptions of no cause of action filed by Peter E. Cloutier, Jr.; Gary S. DeBlieux; Hertzog DeBlieux; Walter C. Jones; John A. Luster; G.F. Thomas, Jr.; Lovan B. Thomas; and R. Stacy Williams is affirmed. That portion of the judgment in favor of People's Bank, Bancshares, and Sam J. Friedman, sustaining their exceptions of no cause of action, is reversed. The summary judgment granted in favor of Kenneth McCoy is affirmed. The case is remanded for trial on the merits against People's Bank, Bancshares, and Sam J. Friedman. Costs of this appeal are to be paid by People's Bank, Bancshares, and Sam J. Friedman.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GUIDRY, J., concurs in the result.
NOTES
[1] The directors named in plaintiffs' suit are Sam J. Friedman, Peter E. Cloutier, Jr., Gary S. DeBlieux, Hertzog DeBlieux, Walter C. Jones, John A. Luster, G.F. Thomas, Jr., Lovan B. Thomas and R. Stacy Williams.
[2] During the course of this litigation, Morris attempted to file a supplemental petition alleging a cause of action against Billy R. Pesnell for a tortious interference with contract, but the trial court did not allow the supplemental petition to be filed. We note also that the parties have briefed and argued the merits and demerits of three additional causes of action: unjust enrichment, tortious interference with contract on the part of the directors, and the directors' liability to Morris under La.R.S. 6:292. Morris' petition does not assert these causes of action, nor are any facts alleged which would support these causes of action.
[3] § 416. Loan on pledge of own stock and purchase of own stock prohibited.

A. No loan shall be made by any bank to any borrower on pledge of the bank's own stock. No bank shall be allowed to purchase or own directly or indirectly any of its own stock unless the stock has been subsequently taken for a debt previously contracted, in which case the stock shall not be held for more than one year.
B. Whoever violates any part of Subsection A shall be fined not more than five hundred dollars a day for each day or part of a day during which a violation continues.