719 So.2d 719 (1998)
David A. DUGAS, et al., PlaintiffsAppellees,
v.
Robert L. GUILLORY, DefendantAppellant.
No. 97-398.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1998.
*720 Steven Gerald Durio, Jeffrey Ackermann, Lafayette, for David A. Dugas, et al.
Michael R. Mangham, Michael John O'Shee, Thomas Martin McNamara, Lafayette, for Robert L. Guillory, et al.
Before THIBODEAUX, COOKS and SULLIVAN, JJ.
THIBODEAUX, Judge.
Plaintiffs, David Dugas and Manly Chauvin, filed suit against Robert Guillory individually and his company, Trans Tech International Wireline, Inc., for specific performance and damages. Mr. Dugas and Mr. Chauvin claim that Mr. Guillory orally promised to transfer 65% of the stock in Trans Tech to them. The trial judge dismissed all claims against the defendant company, as well as *721 the specific performance claim against Mr. Guillory, but reserved to plaintiffs the right to pursue their damages claim. Plaintiffs were allowed to present claims based on detrimental reliance. Mr. Guillory later filed a motion for summary judgment which was denied. The jury found in favor of plaintiffs awarding damages in the sum of $152,000.00 to Mr. Dugas and $342,000.00 to Mr. Chauvin based on their detrimental reliance claims. Mr. Guillory appeals that judgment. Plaintiffs have filed with this court a motion to strike Mr. Guillory's reply brief.

I.

ISSUES
The issues presented before this court for review are the following:
(1) whether the trial judge made a legal error in not granting defendant's motion for summary judgment;
(2) whether the judgment awarding damages to the plaintiffs is subject to reversal;
(3) whether the defendant's peremptory exception of nonjoinder is meritorious; and,
(4) whether this court should grant plaintiffs' motion to strike defendant's reply brief.

II.

FACTS
In December of 1987, Robert Guillory formed Trans Tech International Wireline, Inc., (Trans Tech), contributing all of the start-up capital as well as the financial and legal services. Near the time of its formation, David Dugas and Manly Chauvin began working for the company as salaried, commissioned employees. Mr. Dugas and Mr. Chauvin allege that Mr. Guillory promised to transfer to them 65% of the company stock once he received a return on the initial investment. Mr. Guillory denies ever making such a promise. Mr. Dugas was fired from the company some time in December of 1988 or January of 1989. Mr. Chauvin either quit the company or was fired from it in June of 1990.
On July 17, 1990, Mr. Dugas and Mr. Chauvin filed suit against Mr. Guillory and Trans Tech for specific performance and in the alternative, damages. In response to defendants' filed motions, the trial court dismissed all claims against Trans Tech on the basis of no cause of action as well all tort causes of action against Mr. Guillory on November 20, 1990. Seeking dismissal of the remaining claims against him, Mr. Guillory filed a motion for summary judgment on June 2, 1993. By a judgment dated June 13, 1994, the trial judge dismissed plaintiffs' claims for specific performance due to the lack any written stock transfer agreement, but reserved to plaintiffs the right to pursue their damages claims. Asserting that Louisiana law does not permit a damages award based on the breach of an unenforceable oral contract, Mr. Guillory filed a second motion for summary judgment on September 29, 1994 seeking dismissal of the damages claims. The trial judge denied the motion on December 12, 1994.
On the first day of trial, the judge ruled that the plaintiffs' claims would be limited to those based on detrimental reliance. At the close of both the plaintiffs' and his own case, Mr. Guillory raised motions for a directed verdict, which were both denied. At the close of trial, the jury found in favor of the plaintiffs, assigning to Mr. Dugas a damages award in the sum of $152,000.00 and to Mr. Chauvin a damages award in the sum of $342,000.00. The judgment was issued on July 2, 1996. This appeal ensued.

III.

LAW AND DISCUSSION

Motion for Summary Judgment
On September 29, 1994, Mr. Guillory filed a motion for summary judgment with the trial court asserting that Louisiana law does not allow a damages claim based on the alleged breach of an oral contract which is required by law to be reduced to a writing. On December 12, 1994, the trial court denied the motion without citing reasons. Pursuant to Louisiana Code of Civil Procedure article 966, a trial court may grant a motion for *722 summary judgment if the pleadings and supporting documents such as depositions, affidavits, and answers to interrogatories, demonstrate that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Evans v. Automotive Cas. Ins. Co., 94-129 (La.App. 3 Cir 10/5/94); 643 So.2d 389. In reviewing the denial of Mr. Guillory's motion for summary judgment this court will conduct a de novo review applying the same standards the trial court is required to apply. Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342 (La.1991).
After determining whether the pleadings, affidavits, and documents filed by the mover are correctly filed, the court must analyze them to determine whether they are sufficient to warrant the motion from either an evidentiary or substantive legal standpoint. If they are not sufficient on either the evidentiary or legal ground, the motion for summary judgment must be denied. Hopkins v. Sovereign Fire & Cas. Ins. Co., 626 So.2d 880 (La.App. 3 Cir.1993), writ denied, 634 So.2d 390 (La.1994), and writ denied, 634 So.2d 402 (La.1994). In order to meet the sufficiency threshold, the mover must satisfy the court that no genuine issue of material fact exists. Penton v. Clarkson, 93-0657 (La. App. 1 Cir. 3/11/94); 633 So.2d 918. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Id. at 922.
For the applicable law on the issue before us in this appeal, we must first look to Louisiana Civil Code article 1967 which states in pertinent part the following:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The oral agreement between Messrs. Dugas, Chauvin and Guillory constitutes an onerous promise, as opposed to a gratuitous promise. For the promise to have been gratuitous, as Guillory alleges, Guillory would have had to agree to transfer the stock or its value in the spirit of his own liberality without seeking any services or compensation in exchange. Instead, the transfer was a means to compensate Dugas and Chauvin for services rendered in favor of Trans Tech.
Mr. Guillory's reliance on La.R.S. 10:8-319[1] and Morris v. Friedman, 94-2808 (La.11/27/95); 663 So.2d 19 in forcefully arguing that the absence of an enforceable, written contract obligating him to transfer stock to Mr. Dugas and Mr. Chauvin precludes an award of damages where the alleged contract itself is unenforceable is misplaced. Louisiana Revised Statutes 10:8-319[2] contemplated a sale of securities. In this case, the agreement between these gentlemen did not envision a sale; rather, there was an agreement to form a corporation and then split the shares of stock among Guillory, Dugas, and Chauvin. Furthermore, Mr. Dugas and Mr. Chauvir; do not seek a transfer or sale of the stock, they want 65% of the profits from the sale of Trans Tech by Mr. Guillory. Mr. Guillory himself testified that *723 Mr. Dugas and Mr. Chauvin would get something at "payout" commensurate with their degree of participation. Moreover, even assuming the applicability of La.R.S. 10:8-319, subsection (b) does not require a writing where "payment has been made." Baldwin v. Gibbens, 93-1820 (La.App. 4 Cir. 4/14/94); 635 So.2d 1317. "Payment" does not require the payment of money solely; it may include compensation for past services. Testimony revealed that Mr. Chauvin provided some of the equipment to Trans Tech and, along with Mr. Dugas, brought in some customers to the new company because of their previous relationships in the wireline business. Figueroa Intern., Inc. v. Touby, 623 So.2d 1354 (La. App. 5 Cir.1993).
In Morris, 663 So.2d 19, a former bank president sued a major stockholder for detrimental reliance basing the claim on the stockholder's alleged promises to repurchase in his individual capacity any stock which the former bank president purchased. The stockholder denied making such promises. No writing reflecting the promises was ever made. After a trial on the merits, judgment in favor of the plaintiff was rendered; this court affirmed and our supreme court reversed. It stated that:
plaintiff's detrimental reliance on an onerous promise not made in the statutorily required form would have been held, as in the case of a gratuitous promise which did not meet the form requirements, entirely unenforceable, even to the extent of plaintiff's reliance interest. This is so because there is no logical distinction between the courts' absolute unwillingness to enforce a gratuitous promise not made in the required form and the enforcement of an onerous promise not made in the required form. In both cases, a positive legal form requirement has been imposed by legislation, and it has long been the rule that equity will not lie where a positive legal requirement, not adhered to, exists.
Id. at 25. We refuse to accede to Mr. Guillory's suggestion that Morris is controlling for several reasons. Morris involved a contemplated sale of stock, unlike this case. The language in Morris, quoted above, is dictum. Louisiana Civil Code Article 1967 specifically refers to a gratuitous promise. It makes no mention of an onerous promise. In Citywide Testing and Inspections, Inc. v. Board of Ethics for Elected Officials, 96-1656 p. 5-6 (La.App. 1 Cir. 5/9/97); 693 So.2d 1312, 1315, the court asserted the following:
The starting point for the interpretation of any statute is the language of the statute itself. It is the basic tenet of legislative interpretation that the words of a law are to be given their generally prevailing meaning. Moreover, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. It is presumed that every word, sentence, or provision in law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. The statute may not be extended beyond its obvious meaning.
(citations omitted); see also Nunnally v. State, Department of Public Safety and Corrections, 95-356 (La.App. 3 Cir. 10/4/95); 663 So.2d 254.
Buttressing our conclusion is the civilian concept that case law, whether dictum or otherwise, is secondary information. The primary source of law is the code itself. In determining the proper analytical process for deciding a case:
Law rules to decide Louisiana cases should be derived from the coherent body of general principles which provide the framework of a civil-law system; these principles themselves are based upon legislation and its doctrinal interpretation. To derive law-rules from the teeming and ever-luxuriating growth of decisional material risks the danger of ad hoc improvisations which may be inconsistent with themselves and with general doctrine-so that, to exaggerate, there might be one rule applicable to Chevrolets and another applicable to Fords, but litigation would be needed to determine whether either of these or yet a third rule should apply to Plymouths.
Albert Tate, Jr., Civilian Methodology, 44 Tul.L.Rev. 673, 680 (1970).
*724 For the foregoing reasons, we affirm the judgment of the district court which denied Mr. Guillory's motion for summary judgment.

Jury Award of Damages
The defendant contends that the trial jury erred by rendering an award of damages to the plaintiffs pursuant to their detrimental reliance claim. The defendant argues that the oral agreement to transfer stock to the plaintiffs was a gratuitous promise which was unwritten and executed without the requisite formalities. Therefore, the defendant argues, the plaintiffs' reliance on the gratuitous promise was unreasonable, and the jury award of damages constitutes manifest error. We disagree with the defendant's argument.
The plaintiffs pursued a damages claim under the theory of detrimental reliance after the trial court denied their specific performance claim. As previously discussed, the defendant orally agreed to transfer 65% ownership interest in Trans Tech to the plaintiffs in exchange for the services rendered by the plaintiffs on behalf of Trans Tech, once Trans Tech had become successful and the defendant had recouped his initial investment. After the defendant sold Trans Tech, the plaintiffs sought 65% of the profits from the sale, pursuant to the defendant's oral promise.
Prior to the enactment of La.Civ.Code art.1967, Louisiana courts prescribed to and judicially advanced the doctrine of detrimental reliance. Simmons v. Sowela Technical Institute, 470 So.2d 913 (La.App. 3 Cir.1985). Generally, with regard to contracts, Louisiana jurisprudence has traditionally applied the doctrine of detrimental reliance in two instances: "1) cases in which there is a bilateral or reciprocal agreement which, for some reason, is unenforceable as an onerous contract; and (2) cases which present strong public policy reasons for protecting a certain type of promisee." Id. at 923. (footnote omitted).
Pursuant to Acts 1984, No. 331, § 1, the doctrine of detrimental reliance was statutorily incorporated into La.Civ.Code art.1967. Essentially, La.Civ.Code art.1967 codified the requisite elements of detrimental reliance, as well as, the basis upon which a party may recover damages under such a claim. La. Civ.Code art.1967[3] reads as follows:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
If a party sustains the burden of proving the requisite elements and prevails on a detrimental reliance claim, that party is entitled to damages amounting to the expenses incurred or loss sustained due to his reliance on the promisor's promise. La.Civ.Code art. 1967.
In Carter v. Huber & Heard, Inc., 95-142 p. 3-4 (La.App. 3 Cir. 5/31/95); 657 So.2d 409, 411, writ denied, 95-1662 (La.10/6/95); 661 So.2d 471, this court set forth the requisite elements which must be satisfied to recover damages pursuant to a detrimental reliance claim. We stated:
The "Revision Comments" to [La.Civ. Code art.] 1967 provide that "[u]nder this Article, a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment." Recovery of damages therefore requires (a) the existence of a promise and (b) reasonable reliance on that promise to one's detriment.
As expressed in La.Civ.Code art.1967, however, a party's reliance on a gratuitous promise made without the required formalities is not reasonable and, thereby, insufficient to sustain a claim of detrimental reliance. Nevertheless, our jurisprudence has recognized the availability of a detrimental reliance claim when a party relies on an onerous promise to his detriment, albeit the promise may be void of requisite formalities. *725 See Morris v. People's Bank & Trust Co. of Natchitoches, 580 So.2d 1029 (La.App. 3 Cir.), writs denied, 588 So.2d 101, 102 (La. 1991). In fact, this court has said, "La.[Civ. Code] art.1967 does not require the existence of a formal, valid, or enforceable contract in order for detrimental reliance to occur." Id. at 1036.
Moreover, in Morris, this court discussed the rationale behind the doctrine of detrimental reliance stating:
[T]he basis of detrimental reliance is not the intent to be bound, since detrimental reliance is not really contractual in nature. It is based on the idea that a person should not harm another person by making promises that he will not keep. The question is not whether the promisor really intended to perform what he promised, rather it is whether the promise was made in such a manner that the promisor knew or should have known that the promisee would rely upon it, and if so, whether the promisee has in fact reasonably relied upon the promise and been damaged thereby. When the promisee can prove all of these elements[,] he has shown that the promisor has dealt him an injustice, and the court should be free to remedy the injustice suffered by the promisee.
Morris, 580 So.2d at 1036 (quoting from A Student Symposium, 45 La.L.Rev. at 765-66).
Since the enactment of La.Civ.Code art.1967, Louisiana courts have found detrimental reliance to occur despite the fact an onerous contract may lack a requisite formality, such as written execution in authentic form, provided the requirements of La.Civ. Code art.1967 are satisfied. See Morris, 580 So.2d 1029. Under La.Civ.Code art.1967, the only requirements necessary to maintain a detrimental reliance claim are the existence of a promise and an individual's reasonable reliance thereon that promise to his detriment. Id.
To the contrary, the defendant argues, the controlling authority in this suit should be the court case of Morris v. Friedman, 663 So.2d 19. Under the applicable law existing prior to the effective date of La.Civ.Code art.1967, the court rejected the plaintiff's detrimental reliance claim because the alleged oral promise, whether onerous or gratuitous in nature, lacked the statutory writing requirement. Therefore, the court found that the plaintiff's reliance on such a promise was unreasonable.
The present suit is distinguishable from the Morris case in that the factual circumstances of the present suit occurred after the 1985 enactment of La.Civ.Code art.1967, whereas the factual circumstances of the Morris case occurred prior to the enactment. La.Civ.Code art.1967 was enacted by Acts 1984, No. 331, § 1 and became effective on January 1, 1985. Because La.Civ.Code art. 1967 created a substantive change in the law which could not be applied retroactively, and, in Morris, the alleged promise upon which the plaintiff detrimentally relied occurred prior to its effective date, the court did not apply La.Civ.Code art.1967 to the facts of the Morris suit. The court decided Morris under the law existing prior to January 1, 1985, in which a claim for detrimental reliance would lie only where a writing is required by statute for the enforcement of the promise upon which the claim is based. Since the factual circumstances of the present suit arose after the 1985 enactment of La.Civ. Code art.1967, we find that La.Civ.Code art. 1967 is the applicable law governing this suit.
The record shows that the plaintiffs produced a note, handwritten by the defendant, which evidenced a 65%-35% distribution of ownership interest between the defendant and the plaintiffs. At trial, Kenneth Begneaud, Carl Hammond, and Raymond Boudreaux (all of whom were former friends and business associates of the defendant) testified that the defendant told each of them, on separate occasions, he intended to transfer 65% of ownership stock or of the business of Trans Tech to the plaintiffs and retain 35% ownership interest for himself, after he had recouped his initial investment.
We reason that the defendant's promise constituted a business transaction which the plaintiffs had reason to believe would occur once Trans Tech became successful and the defendant had recouped his investment of $40,000.00. The stock transfer would recompense *726 the plaintiffs for services rendered on behalf of Trans Tech. Due to a sudden disagreement between the defendant and the plaintiffs, the defendant denied making such a promise to transfer the stock, then sold Trans Tech, and sought to reap all profits from the sale. The plaintiffs lost not only the opportunity to retain ownership interests in Trans Tech, but also the chance to benefit from the subsequent sale of the company.
We find that the plaintiffs relied on the defendant's promise to their detriment. The defendant knew or should have known that the plaintiffs would rely on his promise to transfer said stock. The parties were business partners with each individual party providing a specific service or contribution on behalf of Trans Tech. Under La.Civ.Code art.1967 and the given circumstances of this suit, the plaintiffs' reliance on the defendant's oral promise, though not executed in written form, was reasonable because the promise was onerous in nature. See Morris, 580 So.2d 1029.
Furthermore, the trial judge elaborately explained to the jury the theory of detrimental reliance and the requisite elements which a claimant must prove to successfully prevail on such a claim. The trial judge also discussed the types of damages which may be awarded on the basis of a detrimental reliance claim. We determine that the jury was properly instructed on the elements of detrimental reliance and the associated damages. Thus, in the absence of manifest error, we find that the jury was correct in making its factual determinations. The jury's findings are adequately supported by the evidence in the record.
We further find that the jury's assessment of damages totaling $152,000.00 in favor of Mr. Dugas and $342,000.00 in favor of Mr. Chauvin was correct. The defendant sold Trans Tech for $900,000.00. Prior to the sale, the defendant orally agreed to transfer 65% ownership interest in Trans Tech to the plaintiffs. Therefore, the plaintiffs are entitled to an equivalent percentage of the profits which the defendant reaped from the sale, in proportion to their individual contributions to Trans Tech. The jury award of damages was consistent and commensurate with the expenses incurred and loss sustained as a result of the plaintiffs' reliance on the defendant's promise. Based on our review of the record, we find the jury's assessment of damages void of manifest error.
Alternatively, the defendant argues that, even if he made such an oral promise, the agreement was not executed in written form and is, thereby, insufficient to sustain a detrimental reliance claim because it lacks a required formality in accordance with La.Civ. Code art.1947. In its entirety, La.Civ.Code art.1947 states that "[w]hen, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." We find that the defendant's argument is without merit.
The record shows that the parties manifested no intent for the promise/agreement to be executed in written form. There is no evidence that the parties contemplated reducing the promise/agreement to writing. At trial, the defendant testified that an agreement was formed with the plaintiffs, but the specific details of the agreement were supposedly ambiguous. Relying on the defendant's testimony, we infer that the parties did not plan to reduce their negotiations to writing, nor to be bound by a written agreement. At trial, the defendant produced no evidence of a written agreement or his intent to enter into a written agreement with the plaintiffs. Based on their conduct and in the absence of a legal requirement, we reason that the parties intended to be bound solely by verbal agreement, from the moment the defendant orally promised to subsequently transfer the stock to the plaintiffs.

Peremptory Exception of Nonjoinder
On appeal, the defendant filed a peremptory exception of nonjoinder asserting that the plaintiffs failed to join indispensable parties, Bill Petros and Billy Bob Barnes, to their suit. The defendant argues that the failure to join these parties will likely subject the defendant to multiple litigation once the plaintiffs' suit has concluded. We disagree.
La.Code Civ.P. art. 641 provides:

*727 A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
The record shows that both Petros and Barnes opted for a cash settlement in lieu of an arrangement to acquire ownership interests in Trans Tech. Moreover, at trial, neither Kenneth Begneaud, Carl Hammond, nor Raymond Boudreaux testified that the distribution of ownership interest included either Petros or Barnes. These witnesses testified that only the plaintiffs, Dugas and Chauvin, were mentioned by the defendant when discussing the transfer of stock ownership. Based on our review of the record, we determine that both Petros and Barnes sought a cash amount, as opposed to individual ownership interests, as recompense for services rendered on behalf of Trans Tech.
Only the plaintiffs had a collective, vested stake in the defendant's promise to transfer stock ownership in Trans Tech. The adjudication of the plaintiffs' claim will resolve all dispute regarding the proposed stock transfer. Petros and Barnes may, however, have an independent claim against the defendant with regard to their proposed cash settlements with the defendant. We conclude that neither Petros nor Barnes have a vested interest in the transfer of ownership interests in Trans Tech. We determine that neither party can be deemed an indispensable party to this suit and that joinder of these parties is not necessary for complete adjudication of the plaintiffs' claim. The nonjoinder of Petros and Barnes will not subject the defendant to further lawsuits regarding the transfer of ownership interests in Trans Tech. Therefore, we deny the defendant's peremptory exception of nonjoinder.

Motion to Strike Reply Brief
We find the plaintiffs' motion to strike to be without merit. Mr. Guillory's reply brief does not violate Rule 2-12.6 of the Louisiana Rules of Court as it is confined to the rebuttal points urged in the plaintiffs' brief.

IV.

CONCLUSION
Based on the foregoing reasons, we affirm the judgment of the trial court and deny both the defendant's peremptory exception of nonjoinder and the plaintiffs' motion to strike the defendant's reply brief.
AFFIRMED.
EXCEPTION OF NONJOINDER DENIED.
MOTION TO STRIKE DENIED.
NOTES
[1] This statute was repealed by Act 1995, No. 884, § 1, effective January 1, 1996. It has been replaced by La.R.S. 10:8-113.
[2] It states in pertinent part that:

§ 8-319. Statute of frauds
A contract for the sale of securities is not enforceable by way of action or defense unless:
(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;
(b) delivery of a certified security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to send written objection to the issuer within ten days after receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable under this provision only to the extent of the delivery, registration, or payment.
[3] As enacted by Acts 1984, No. 331, § 1.