COOKS, J.,
dissents.
| lAlthough I agree with the majority’s decision on all other issues, I cannot join in the majority’s reversal of the trial court’s award of damages to Mr. Kite regarding the Gum Cove property. I believe the trial judge correctly awarded a return of the monies paid by Mr. Kite on behalf of his son Alan for that property which was titled in his son’s name. The majority appears entrenched in old law which is no longer applicable following the enactment of La. Civ.Code art.1967, which effected a change in the law in 1985. The former rule was so engrained in Louisiana law, and fastidiously taught, the majority apparently is unwilling to recognize the import of the new law, despite the fact that this court recognized, and presaged, the change in the law in the very case relied upon by the majority for its current position, as did the Louisiana Supreme Court in a case relying on that very case.
The majority’s reliance on Ogden v. Ogden, 93-1413, p. 5 (La.App. 3 Cir. 9/21/94), 643 So.2d 245, 248, writ denied, 94-2539 (La.1/13/95), 648 So.2d 1339, and the requirement in Civil Code Article 1839 that “[a] transfer of immovable property must be made by authentic act or by act under private signature,” relies Con decisions involving facts occurring before the adoption of La.Civ.Code art.1967, which became effective January 1, 1985, and misapprehends the nature of the agreement between Mr. Kite and his son regarding the Gum Cove property. The Louisiana Supreme Court, in Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19, 25, relying on this court’s decision in Ogden, noted in footnote 11 (emphasis added), “[t]he addition of La.C.C. art. 1967 in the Civil Code as an additional ground for enforceability of obligations may well alter this analysis.” This fact was also noted by this court as well in the first Morris decision, see Morris v. People’s Bank & Trust Co., 580 So.2d 1029, 1033 (La.App. 3 Cir.), writ denied, 588 So.2d 101 (La.1991). Louisiana Civil Code Article 1967 (emphasis added), entitled “Cause defined, detrimental reliance” provides:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
Indeed, in two subsequent cases this court, applying La.Civ.Code art. 1967, found the requirement that an agreement be in writing in cases involving onerous agreements controlled by Article 1967, no longer applied after its effective date. See Dugas v. Guillory, 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719 and Cenac v. Hart, 98-1679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690. Relying on this' court’s' decisions in these cases, the Louisiana Fifth Circuit Court of Appeals in Rhoads v. Quicksilver Brokers, Ltd. 01-768, p. 9 (La.App. 5 Cir. 1/14/02), 801 So.2d 1284, 1289 (emphasis added) reversed the lower court’s grant of summary judgment noting:
laPlaintiff contends the “cause” argument is simply defendant’s attempt to impose a suspensive condition on plaintiffs right to exercise her option, so that *1201 defendant seeks to orally modify the terms of the stock option agreement. Plaintiff points out that, at the time the stock option agreement was confected, Louisiana had a Statute of Frauds regarding securities that stated a contract for the sale of securities was not enforceable unless it was in writing. La. R.S. 10:8-319 (Repealed).
In Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19, 26, the Louisiana Supreme Court held that a claim of equitable estoppel or detrimental reliance will not lie when the law requires the contract to be in writing: “[T]here can be no recovery on the basis of equity where, as in the instant case, a positive statutory writing requirement, not adhered to, exists.” The Moms court noted, however, that the facts in the case occuired in 1984, prior to the effective date ofLa.C.C. art. 1967...
In Dugas v. Guillory, 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, 726, in which former employees of a company brought action against the principal for breach of an oral promise to transfer 65% of the company’s stock to the employees, the court held that under La. C.C. art. 1967 and the given circumstances of the suit, the plaintiffs’ reliance on the defendant’s oral promise, although not executed in written form, was reasonable because the promise was onerous in nature.
As explained in Dugas and in Cenac v. Hart, 98-01679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690, 695, the 1985 enactment of La.C.C. art. 1967 was controlling over the Statute of Frauds....
The Louisiana Second Circuit Court of Appeals discussed the import of La.Civ. Code art. 1967 in Benton v. Clay, 48,245 (La.App. 2 Cir. 8/7/13), 123 So.3d 212, 222-23 (emphasis added):
Detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.... This is because detrimental reliance is not based upon the intent to be bound. Rather, the basis of detrimental reliance is the idea that a person should not harm another person by making promises that he will not keep. Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment. Suire v. Lafayette City-Parish Consol. Gov’t, supra [2004-1459 (La.4/12/05), 905 So.2d 370]; Allbritton v. Lincoln Health Syst, Inc., supra [45,537 (La.App. 2d Cir.10/20/10), 51 So.3d 91].
14To prevail on a detrimental reliance claim, Ms. Benton was not required to prove a valid, enforceable contract ... Mr. Clay harmed Ms. Benton by making a promise that he did not keep. Ms. Benton was deprived of an undivided 1/2 ownership interest in the property and receiving her share of the proceeds from the timber sales. Based on this record, Ms. Benton proved her claim for detrimental reliance, in addition to the fact that she proved a valid and enforceable contract.
FN5. Mr. Clay contends that, because the agreement to buy the property jointly with Ms. Benton was not written, the doctrine of detrimental reliance does not apply, citing Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19. However, since the enactment of La. C.C. art. 1967, Louisiana courts have found detrimental reliance to occur despite the fact that an onerous contract may lack a requisite *1202 formality such as written execution in authentic form, provided that the requisites of La. C.C. art. 1967 are satisfied. See Dugas v. Guillory, 97-398 (La.App. 3d Cir.10/7/98), 719 So.2d 719.
Furthermore, we reject the Clays’ arguments that the formalities required by La. C.C. art. 2440 are lacking in this case and preclude recovery. The agreement between Ms. Benton and Mr. Clay was not required to be in any particular written form. It was not a transfer of immovable property between Ms. Benton and Mr. Clay as contemplated by La. C.C. art. 1839, which provides in pertinent part:
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
Further, their agreement was not a sale or promise of sale of an immovable between Ms. Benton and Mr. Clay as governed by La. C.C. art. 2440, which states:
A sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839.
The parties began with an oral agreement to jointly bid on the property and secure the winning bid ...
[[Image here]]
The trial court did not err in ordering specific performance of the agreement and ordering the Clays to do whatever was ^necessary to transfer an undivided 1/2 interest in the property to Ms. Benton free of any mortgages, liens, or other encumbrances.
Mr. Kite gave unrefuted testimony at trial that Alan made an onerous agreement with him to enable Alan to purchase an undivided interest in immovable property with a third party. The agreement between Alan and Mr. Kite was not an agreement between them to purchase and sell immovable property. Mr. Kite explained in his unrefuted testimony at the trial on the merits that the agreement was, instead, an agreement for Mr. Kite to provide Alan with the funds he needed to purchase an undivided interest in the immovable property in exchange for which Alan promised his father he would transfer title to the property to him at any time Mr. Kite requested him to do so. Mr. Kite lived up to his part of the agreement and provided the funds to Alan enabling Alan to purchase an interest in the Gum Cove property. Alan refused to honor his part of the agreement, and would not even allow his father any further access to the property. When questioned at trial, Mr. Kite explained that Alan expressed to him that he wanted to buy an interest in the Gum Cove property. According to Mr. Kite’s testimony, he had been using the property free of charge thanks to a personal friend. He testified that Alan went to Lake Charles for the closing with the other new owners, and, while at the closing, telephoned Mr. Kite from Lake Charles to inform him that the property interest must be purchased in Alan’s name: “He called me and he said Daddy the only way that we can do this is that we’re [Alan and his co-owners] gonna form a hunting club, and in order to be in the hunting club you’ve got to have the property in the person’s name and would you allow me to put this property in my name and at any time you want me to deed it back to you I would be more than glad, I would do it because this is the only way that we [meaning Alan and the co-owners] can form |fithis hunting club.” Additionally, Mr. Kite testified without contradiction *1203 that he “didn’t owe any money to Arnaco” the seller of the property. Mr. Kite was not purchasing immovable property from Arnaco, which transaction would have required an authentic act in writing. Alan was purchasing an interest in immovable property from the Seller, Amaco, and it is Alan who signed the necessary written authentic act to transfer title to immovable property as is required by law. After the enactment of La. Civ.Code art. 1967, there is no requirement that Alan and Mr. Kite’s agreement concerning the Gum Cove property be in writing, even though the agreement relates to immovable property. See, Benton, 123 So.3d at 222-23, infra. If Alan had honored his agreement, his deed transferring ownership of his interest in immovable property to his dad would have been by authentic act in writing, but that never occurred because he refused to keep his word.
Mr. Kite is entitled to recover his money because he relied on Alan’s promise to his detriment. Both cases cited above after the adoption of La. Civ.Code art.' 1967, and cases such as Ogden, heralding the change in the law, clearly demonstrate the rightness of the trial court’s decision and gov- . ern the decision of this court. I note, too, contrary to the concurrence, the trial court did not “rely on facts not offered into evidence at the two-day trial on the merits” but did in fact, rely on the undisputed testimony of Mr. Kite at the trial on the merits concerning the Gum Cove property. I note too that Alan’s lawyer has done a commendable job in taking over this case from previous counsel, but the existence of that fact cannot change the facts and the law in this case. To do so in this case obfuscates, confuses, and simply ignores what has been the law since 1985.
I respectfully dissent from that portion of the majority’s opinion that reverses the trial court’s award of monetary damages to Mr. Kite concerning the 17Gum Cove property. Mr. Kite is entitled to recover the $29,625.00 awarded for the Gum Cove property.