576 So.2d 532 (1990)
THIBAUT, THIBAUT, GARRETT AND BACOT
v.
SMITH AND LOVELESS, INC.
No. CA 89 1514.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
Rehearings Granted in Part and Denied in Part March 27, 1991.
Writ Denied May 24, 1991.
*533 John Tharp, Baton Rouge, for plaintiff-appellee, Thibaut, Thibaut, Garrett & Bacot.
Jack M. Alltmont, New Orleans, for defendant-appellant, Smith and Loveless, Inc.
Before COVINGTON, C.J., LANIER, J., and VIAL LEMMON,[*] J. Pro Tem.
MARY ANN VIAL LEMMON, Judge Pro Tem.
This appeal involves a dispute between plaintiff attorneys and their client over attorneys' fees.
Smith and Loveless, Inc. (the client) had supplied materials to the general contractor on a public works contract. When the general contractor defaulted, Smith and Loveless employed Thibaut, Thibaut, Garrett and Bacot (the plaintiff attorneys) to represent it in collecting $243,360 from the general contractor's surety.
The attorneys' version of the agreement was that they were employed under a tenpercent contingency fee contract, with a $2,500 retainer and a $125 hourly rate to be credited toward the contingency fee. The client's version was that the employment contract was simply for $125 per hour with no contingency fee agreement, and that the $2,500 was an advance on that hourly fee.
When the surety made the initial payment of $179,883.60, the attorneys deposited the entire amount into their account and remitted ninety percent to the client, retaining a fee of ten percent or $17,988.36. The surety subsequently paid the balance of $63,476.40 and the attorneys remitted the entire amount to the client.
The attorneys then filed suit to recover ten percent of the final payment. The client's reconventional demand requested refund of the amounts originally retained and a judgment limiting the attorneys' fees *534 to $125 per hour for the twenty-six hours the parties concede were spent by the attorneys on the case.
The original trial judge determined that the attorneys had proved the existence of a contingency fee contract by a preponderance of the evidence and were entitled to a fee of $24,336. He rendered judgment in the attorneys' favor for $6,347.64, the difference between the amount initially withheld by the attorneys and ten percent of the total amount of recovery.
On appeal this court held that a fee of $24,336 was "clearly excessive for these professional services" and remanded the case to the trial court with instructions to conduct an evidentiary hearing to determine a reasonable fee. 517 So.2d 222 (1987). The court of appeal did not reach the issue of whether a contingency fee contract had been proved.
On remand, the successor trial judge accepted the original trial judge's credibility determination that the parties had agreed on a contingency fee contract and evaluated the reasonableness of the fee on that basis. He found a fee of $17,988.36 was reasonable.
In order to properly review the trial court's decision it is first necessary to determine whether the contract was for a fixed fee or a contingency fee.[1] Code of Professional Responsibility, DR 2-106(B)(8) specifically mandates a consideration of whether a fee is fixed or contingent. Reasonableness under a contingency fee contract may be different than reasonableness under a fixed fee contract. When the parties have contracted for the method of payment of attorneys' fees, deference must be given to the decision of the parties in exercising contractual freedom, subject to scrutiny of the courts to determine the excessiveness of the contract for attorneys' fees.
A complete evaluation of the dealings between the parties is necessary in order to determine whether the trial court committed manifest error in finding the contract was a contingency fee contract.
When the general contractor defaulted on its obligation to Smith and Loveless, another creditor on the job referred Smith and Loveless to the plaintiff attorneys. The referring creditor had employed these same attorneys at a flat rate of $100 per hour.
On February 28, 1984 Smith and Loveless's representative, Ron Schumacher, spoke to Randy Garrett, the attorney in plaintiff attorneys' firm who was handling the referring creditor's claim. Garrett requested documentation of invoices and sales agreements for his review and evaluation of the case. No fee contract was discussed at this time. Bill Woods, the client's employee, sent the documentation on March 2.
In the first discussion of fee on March 28, 1984 Garrett told Woods about the tenpercent statutory limitation on fees in public *535 works contracts and of the necessity for substantiation of reasonableness.[2] Woods made the following memo of that conversation:
"Mr. Garrett further advised that his firm's fees for handling this matter would be $125.00 per hour and that he would require a $2,500.00 retainer to be returned with the requested affidavit [for the proof of claim form.] I told Randy [Garrett] I would consider the fee arrangement and get back with him."
Woods wrote to Garrett that same day and agreed to employ the firm, forwarding a check for the $2,500.00 retainer and confirming "that your hourly rate for handling this type of legal effort is $125 per hour." Without any further communication to the clients, the attorneys deposited the retainer and began performing legal services.
On April 24, Garrett and Bacot, another attorney in the firm, met with Woods and advised him to withhold filing suit and to consider foregoing interest because "attorneys fees and other costs could far exceed the amount of any interest that would be collected." Bacot and Garrett testified that at this meeting they clearly explained to Woods that they intended to charge a ten percent fee. However, there was no written documentation of such an agreement and Woods flatly denies any such agreement took place and asserts he would have not been authorized to enter into such an agreement because his company's policy was to hire attorneys only on an hourly basis.
The attorneys enjoyed a superior position in insuring the terms of the fee agreement were clearly understood. They could have executed a formal written contract or simply confirmed by letter what agreement had been reached.[3] When they undertook representation after receipt of the March 28 written documentation of an hourly fee without a written disclaimer thereof, they tacitly accepted the hourly rate.
The debt that the attorneys were employed to collect was secured by the bond furnished by the general contractor. The client agreed to waive interest and furnished a completed proof of claim form to the attorneys, who forwarded it to the surety. Immediately upon receipt of the form, the surety approved payment of the entire principal amount, after the client further agreed to defer payment of a portion of the principal ($63,476.90) for one *536 month. The attorneys conceded at trial that "we never anticipated ... that there would be no recovery. The major effort here was the speed of the recovery." The surety's attorney testified that the claim was routine. There are no indications this was the type of employment which traditionally would be subject to a contingency contract. There was no risk undertaken by the attorneys that no recovery would be made.
This record clearly establishes there was not a contingency contract but a contract for a fixed hourly fee. The trial court committed manifest error in finding a contingency contract.
Since the parties stipulated that twenty-six hours were spent on this file, the remaining issue is the reasonableness of the fee of $3,250 (twenty-six hours at $125 per hour).
A careful review of the considerations of the Code of Professional Responsibility leads to the conclusion that the fee of $125 per hour was not an unreasonably excessive fee. Expert testimony established this rate was in the top range of hourly compensation. The attorneys performed their services with the requisite skill and obtained excellent results. We conclude the hourly fee was not excessive.
We conclude that Smith and Loveless is entitled to judgment on its reconventional demand for the amount of the difference between the amount withheld by the attorneys and the amount due under the hourly contract.[4]
The trial court found no violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, and denied an award of attorney's fees for this action. We do not find the court committed manifest error in so ruling. That portion of the judgment is affirmed.
Accordingly, the judgment of the trial judge dismissing the client's reconventional demand is reversed, and judgment is rendered in favor of the client in the amount of $17,238.36 with legal interest from July 13, 1984, until paid. In all other respects, the judgment of the trial judge is affirmed. All costs are assessed to the plaintiff-attorney.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

ON APPLICATIONS FOR REHEARING
PER CURIAM:
Smith and Loveless, Inc. contends on rehearing that the decree of our opinion is "not specific" because it asked for a judgment "against the Thibaut ... firm and Mr. Garrett and Mr. Bacot individually" and our decree only provides that "judgment is rendered in favor of the client in the amount of $17,238.36 with legal interest from July 13, 1984, until paid." Initially, it must be noted that Smith and Loveless, Inc. only sued the Thibaut firm (as a partnership) and Mr. Garrett. Mr. Bacot was not made a party defendant. Further, the trial court judgment presently before us only dismissed the Smith and Loveless reconventional demand in favor of the Thibaut firm and Mr. Garrett; it did not mention Mr. Bacot. Finally, we question whether a judgment can be rendered against a partnership and an individual partner in solido. La.C.C. art. 2817 and the official revision comments therefor. However, our decree is defective because it is only in favor of the client (Smith and Loveless, Inc.) and is not against the Thibaut firm. Scott v. State, 525 So.2d 689 (La. App. 1st Cir.1988). Accordingly, our decree is amended to provide as follows:
The judgment of the trial court dismissing the client's reconventional demand is reversed, and judgment is rendered in favor of Smith and Loveless, Inc. and against Thibaut, Thibaut, Garrett and Bacot in the amount of $17,238.36, with legal interest thereon from July 13, 1984, until paid. In all other respects, the judgment of the trial court is affirmed. All costs are assessed to Thibaut, Thibaut, Garrett and Bacot.
In our original opinion, we observed as follows:

*537 The trial court found no violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, and denied an award of attorney's fees for this action. We do not find the court committed manifest error in so ruling.
Smith and Loveless, Inc. contends that the trial court "gave no consideration whatsoever" to its claim for a penalty attorney fee, that, therefore, we could not accurately say that the trial court found no violation to justify the fee, and, therefore, the manifest error rule was not applicable, and we should decide the issue on a de novo basis. We pretermit ruling on the merits of this argument. Instead, we deny the claim of Smith and Loveless, Inc. for a penalty attorney fee on an additional ground. The Louisiana Unfair Trade Practices Act (LUTPA), La.R.S. 51:1401 et seq., is an act of the legislature. The legislature cannot enact laws defining or regulating the practice of law in any respect; the Louisiana Supreme Court has the exclusive and plenary power to define and regulate all facets of the practice of law, including the conduct of attorneys and the attorneyclient relationship. Succession of Wallace, 574 So.2d 348 (La.1991), and the authorities cited therein. Thus, the LUTPA is not applicable to the facts of this case.
NOTES
[*] Judge Mary Ann Vial Lemmon is serving as judge pro tempore by special appointment of the Louisiana Supreme Court to fill the vacancy created by the death of Judge Steve A. Alford, Jr.
[1] Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982) set out criteria to be used in evaluating reasonableness of a fee. These factors are now codified in Rule 1.5(A) of the Rules of Professional Conduct of the Louisiana State Bar Association. At the time this contract was entered into the same criteria were set out in the Code of Professional Responsibility DR 2-106 as follows:

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
[2] R.S. 38:2246 limits recovery of attorneys' fees to ten percent against the debtor, and requires substantiation of reasonableness, even when that statutory amount is specified in the contract. This case does not involve that statutory limitation, but rather involves a contract between the creditor and its attorney.
[3] The Code of Professional Responsibility, Article 16, Articles of Incorporation, Louisiana State Bar Association, was adopted as a rule of the Louisiana Supreme Court in 1974, pursuant to LSA-R.S. 37:211. The Code is divided into (1) Canons, (2) Ethical Considerations, and (3) Disciplinary Rules.

The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationship with the public, with the legal system and with the legal profession. Ethical Considerations are aspirational in character, and they represent the objectives toward which every member of the profession should strive. The Disciplinary Rules are mandatory in character. They state the minimal level of conduct below which no lawyer can fall without being subject to disciplinary action. Louisiana State Bar Association v. Edwins, 329 So.2d 437, 442 (La.1976) [quoting Hood, Renewed Emphasis on Professional Responsibility, 35 La.L.Rev. 719, 737 (1975)].
The Disciplinary Rules did not impose specific restrictions on contingency fee contracts. However, the Ethical Considerations provided guidelines regarding such contracts. State Bar Articles of Incorporation, Art. 16, Code of Professional Responsibility, EC 2-19 and EC 2-20, respectively, suggested that contingency fee contracts be reduced to writing, and that a lawyer "generally should decline to accept employment on a contingent fee basis by one who is able to pay a reasonable fixed fee." It is not necessarily improper for a lawyer to enter into such a contract with any client who is fully informed of all relevant factors and desires that arrangement.
The Rules of Professional Conduct replaced the Code of Professional Responsibility, effective January 1, 1987. Several of the Ethical Considerations pertaining to contingency fee contracts were incorporated into the Rules of Professional Conduct, Rule 1.5. While Code of Professional Responsibility EC 2-19 merely stated that it is desirable to reduce such contracts to writing, Rules of Professional Conduct Rule 1.5(c) requires that a contingent fee agreement "shall be in writing."
[4] The clients did not ask for a credit of the $2,500 retainer.