FREDERICKA HOMBERG WICKER, Judge.
[ 2Thomas Brenan, plaintiff in reconvention, appeals the trial court’s judgment granting defendant in reconvention, William Newton’s Motion for Summary Judgment as to plaintiff in reconvention’s Louisiana Unfair Trade Practice Claim. The trial court certified the judgment as final. For the reasons which follow, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL HISTORY
Plaintiff/Appellee, William Newton and Defendant/Appellant Thomas Brenan are former business partners who first worked together at Newton & Associates, a collection agency. William Newton and Thomas Brenan formed several limited liability companies: NSB Properties, L.L.C, NSB IV, and NB Properties, L.L.C. (collectively, “the LLCs”). Mr. Newton, Mr. Bre-nan, and Scott Jefferson were the initial members of NSB. Mr. Newton, Mr. Bre-nan, Mr. Jefferson, and Mr. Newton’s brother-in-law, I.V. Jeansonne, were the initial members of NSB IV. Mr. Newton is the majority owner of NSB, and, along with I.V. Jeansonne, the majority owner of NSB IV. In 2003, the LLCs hired Judy | ¡¡Stevens, Thomas Brenan’s sister-in-law, as the day-to-day manager of its properties.
In 2006, William Newton sold his interest in Newton & Associates to Coface Collections North America, Inc. pursuant to the terms of an Asset Purchase Agreement. The Asset Purchase Agreement contained a non-compete clause prohibiting Mr. Newton from competing with Cofaee for a period of five years. Following this acquisition, Coface hired William Newton as President and retained Thomas Brenan as a consultant.
On December 31, 2008, Mr. Newton resigned as President of Coface. Mr. Bre-nan was subsequently promoted to President and Mr. Newton continued working for Coface as a consultant. After his resignation, Mr. Newton, according to his deposition testimony, began “looking into different things” with regard to the LLCs. In his deposition, Mr. Newton testified that he ordered the LLCs’ accountant to audit the LLCs’ books, and learned that Thomas Brenan had allegedly sold two of the LLC-owned vending machines to Judy *287 Stevens. William Newton stated that he believed that the vending machines generated at least $4,000 per year in income and had been sold to Judy Stevens for $175. Mr. Newton also testified at his deposition that Judy Stevens had neglected to inspect the work of a contractor at an LLC-owned property in Slidell because she had “a fear of crossing bridges.” According to Mr. Newton’s testimony, he believed that Judy Stevens had disbursed over $200,000 to a contractor based on “[pjolaroid pictures of shoddy work.”
On March 11, 2009, Mr. Newton informed Judy Stevens that due to the LLCs “losing a lot of money monthly for a long time,” he was cutting her responsibilities to part-time beginning the following month. On March 19, 2009, William Newton sent Judy Stevens an e-mail indicating his disapproval of her |4taking leave without notice, and stating that “there were a number of things that happened in the last year where I should have been kept in the loop and I was not.” Mr. Newton subsequently transferred the .day-to-day management of the LLCs from Judy Stevens to his son, Billy Newton.
On September 2, 2010, Coface gave William Newton notice that it was terminating his consulting contract. In late 2010, Mr. Newton began working with Clark Pelleg-rin, owner of the collection agency James, Clark & Associates, LLC. In January 2011, Mr. Newton, and Clark <& Associates, LLC, a company Mr. Newton owned, purchased the assets of James, Clark & Associates, LLC and hired Clark Pellegrin as an employee. Mr. Newton also gave Clark Pellegrin Cofaee’s client list, which Mr. Newton had compiled as a consultant. In January 2011, Coface filed suit against William Newton in Delaware state court for his alleged violation of the non-compete clause with Coface. The suit was subsequently removed to Federal Court. On February 18, 2011, a Delaware Federal Court issued a Preliminary Injunction Order enjoining William Newton from competing with Coface.
On February 21, 2011, Mr. Newton met with Keith Pfister, Thomas Brenan’s cousin and a former contractor for the LLCs. Mr. Newton testified at his deposition that he initiated the meeting with Keith Pfister because he was seeking information about irregularities in the LLCs’ expenditures with regard to certain properties. During their meeting, Keith Pfister provided Mr. Newton with a handwritten statement stating that Brenan had instructed him to install sod purchased by the LLCs at Mr. Brenan’s personal home. According to William Newton’s deposition testimony, Keith Pfister also disclosed that Thomas Brenan had instructed him to install cabinets originally intended for properties owned by the LLCs at Mr. Brenan’s personal home. Keith Pfister later executed an affidavit |firecanting large portions of his previous handwritten statement. However, Mr. Newton’s deposition testimony indicates that he was concerned about numerous payments allegedly made to members of Thomas Brenan’s family. During his deposition, Mr. Newton stated:
It was ludicrous, some of the things that were on the books, where he was paying friends, relatives, in-laws, money for work that was not really documented adequately. Things just started popping — the more I looked, the more I found. And the more I looked, the more I realized that some of the files that were missing could probably even be more damaging, but I’ll never know because the files disappeared.
On April 6, 2011, Mr. Newton and the LLCs filed suit in the 24th Judicial District Court against Thomas Brenan, Judy Stevens, and other members of Thomas Brenan’s family who had periodically *288 worked for the LLCs. The lawsuit alleged that Mr. Newton and the LLCs had suffered damages based on, inter alia, Mr. Brenan’s “theft of company assets,” and “insubordination.” .On August 18, 2011, the LLCs amended their Petition, dismissing Mr. Newton as a plaintiff. On February 18, 2012, the LLCs filed a First Supplemental Petition for Damages. On March 8, 2012, Thomas Brenan filed an Answer, Reconventional Demand, and Third Party Demand. In this pleading, Thomas Brenan reconvened against the LLCs for initiating the original lawsuit. Further, Thomas Brenan alleged that third-party defendants, William Newton, and his attorney, John Treme, conspired to file suit against Brenan in order to retaliate against him for enforcing the non-compete clause between Coface and William Newton. Thomas Brenan’s petition alleged that Newton’s “retaliatory lawsuit” constituted a violation of the Louisiana Unfair Trade Practices Act (hereinafter “LUTPA”).
On August 16, 2013, Thomas Brenan filed a Peremptory Exception of Prescription seeking dismissal of all of the LLCs’ claims against him as prescribed and/or perempted. On September 20, 2013, Mr. Newton filed a Motion for |BSummary Judgment as to Mr. Brenan’s claims for civil conspiracy and for violation of LUT-PA. The trial court held hearings on Mr. Newton’s Motion for Summary Judgment and Mr. Brenan’s Exception of Prescription over two days in November 2013. On November 5, 2013, the trial court granted Mr. Newton’s Motion for Summary Judgment with regard to Brenan’s LUTPA claim. On January 30, 2014, the trial court issued Written Reasons for Judgment with respect to its November 5, 2013 judgment dismissing Thomas Brenan’s LUTPA claim. The instant appeal follows.
DISCUSSION
In his appeal, Thomas Brenan alleges that the trial court erred in dismissing his LUTPA claim. Mr. Brenan’s appeal points out that in the trial court’s written reasons for judgment, the court appears to have dismissed his claim in part because he and Mr. Newton are not competitors. He alleges that Mr. Newton’s suit against him was retaliatory in nature and constitutes an unfair trade practice within the definition of LUTPA. For the following reasons, we find that the trial court ruled correctly in granting Mr. Newton’s motion for summary judgment with regard to Mr. Brenan’s claims under the Louisiana Unfair Trade Practices Act. The evidence admitted for purposes of the motion for summary judgment reflects that, under these specific facts and circumstances, William Newton was exercising a valid juridical right by filing suit against Thomas Brenan and his co-defendants. Furthermore, the trial court’s erroneous written reasons for judgment do not affect the validity of the judgment itself. Accordingly, the trial court’s judgment granting William Newton’s motion for summary judgment is hereby affirmed.
The law is well-settled that an appellate court reviews the granting of a motion for summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
*289 The Louisiana Unfair Trade Practices Act, codified in Louisiana Revised Statutes 51:1401 et seq., makes “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce” unlawful. Section 1409, entitled “Private Actions,” specifically creates a private cause of action under LUTPA, which is available to any person “who suffers any ascertainable loss of money or movable property ... as a result of the use or employment by another person of an unfair or deceptive method, act, or practice ...”, La. R.S. 51:1409.
Acts which constitute unfair or deceptive practices are not specifically defined in the statute and are instead determined by courts on a case-by-case basis. Ferrara v. City of Shreveport, 29,845 (La.App. 2 Cir. 9/24/97), 702 So.2d 723, 726, writ denied, 97-2679 (La.1/9/98), 705 So.2d 1109. In order to prevail in an action under LUTPA, a plaintiff must prove that the defendant’s underlying conduct offends public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Camp, Dresser & McKee, Inc. v. Steimle and Associates, Inc., 94-547 (La.App. 5 Cir. 2/15/95), 652 So.2d 44. For conduct to be “unfair” under LUTPA, it must offend established public policy. NOLA 180 v. Treasure Chest Casino, 11-853 (La.App. 5 Cir. 3/27/12), 91 So.3d 446, 449. Under LUT-PA, “Trade” or “commerce” is defined as “the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of | svalue wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.” La. R.S. 51:1402(9).
Under the particular facts and circumstances of this case, we find that the underlying behavior which forms the basis for Thomas Brenan’s LUTPA claim does not rise to the level of an unfair trade practice. In Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 13-1582 (La.5/7/14), 144 So.3d 1011, 1026, reh’g denied (La.7/1/14), 2014 La. LEXIS 1602, the Louisiana Supreme Court held that alleged discovery violations committed by a party during litigation did not constitute a violation of LUTPA. In that case, the plaintiffs alleged that the defendants’ behavior during discovery and their failure to institute a concursus proceeding constituted a violation of LUTPA. The supreme court held that “defendants’ actions in this case do not violate LUTPA because they do not fall under the protection of LUT-PA’s narrow goal of protecting against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster healthy and fair business competition.” Id. at 1026.
In this case, as in Quality Environmental Processes, Inc., there may be questions regarding the propriety of the parties’ conduct in the litigation which forms the basis for Thomas Brenan’s LUTPA claim. However, LUTPA was not designed to protect against the specific behavior which forms the basis for Thomas Brenan’s claim. Furthermore, while the lawsuit filed by William Newton on behalf of the LLCs was arguably the result of months of rancorous disputes between the parties, a review of the record reveals that Newton may arguably have some cognizable legal claims against Mr. Brenan and his family members. William Newton’s effort to exercise his juridical rights in connection with these claims is not an unfair trade practice under LUTPA. Accordingly, because the | ^underlying behavior was not an unethical trade practice, the trial court’s dismissal of Thomas Brenan’s LUTPA claim was appropriate.
*290 Finally, although the trial court’s statement in its reasons for judgment that a LUTPA plaintiff must be a “competitor” in order to be afforded a private action is incorrect, “judgments and reasons for judgments are two distinct documents, and appeals are taken from judgments.” Ziegel v. South Central Bell, 93-547 (La.App. 5 Cir. 3/16/94), 635 So.2d 314.
CONCLUSION
For the foregoing reasons, we find that the trial court did not err in its judgment granting William Newton’s motion for summary judgment with regard to Thomas Brenan’s Louisiana Unfair Trade Practices claim. Accordingly, the trial court’s judgment dismissing Thomas Brenan’s claim is affirmed.

AFFIRMED