# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-637 CW 18-702

## GR RESTAURANTS, LLC

## VERSUS

## SUZANNE SAVOY SANTILLO, LLC, AND SUZANNE SAVOY SANTILLO

\*\*\*\*\*\*\*\*\*\*\*

### APPEAL FROM THE
### FIFTEENTH JUDICIAL DISTRICT COURT
### PARISH OF LAFAYETTE, NO. C-20180458
### HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

**WRIT DENIED; AFFIRMED.**

**James P. Lambert**
**315 S. College Rd., Suite 146**
**Lafayette, LA 70503**
**(337) 261-3737**
**COUNSEL FOR APPELLANTS:**
       **Suzanne Savoy Santillo, LLC and Suzanne Savoy Santillo**

**Scott M. Richard**
**Robert D. Felder**
**Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards, L.L.P.**
**810 South Buchanon Street**
**P.O. Box 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**COUNSEL FOR APPELLEE:**
       **GR Restaurants, LLC**

**Alan W. Stewart**
**Gibson Law Partners, LLC**
**2448 Johnston Street**
**P.O. Box 52124**
**Lafayette, LA 70505**
**(337) 761-6023**
**COUNSEL FOR APPELLEES:**
**Scott L. Sternberg and Sternberg, Nacarri & White, LLC**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On January 15, 2018, GR Restaurants, LLC (hereafter GRR) filed suit against Suzanne Savoy Santillo, LLC and Suzanne Savoy Santillo (hereafter collectively referred to as "Santillo") for detrimental reliance, alleging that Santillo promised to exchange her ownership in the Blue Dog Café in Lafayette for an interest in a new, re-formed entity that owned both Blue Dog Cafes in Lafayette and Lake Charles, but then refused to abide by this agreement. Prior to the above suit, Santillo had filed suit against Stephen Santillo, Jacques Rodrigue and Andre Rodrigue, the owners and members of Blue Collar Enterprises, which owns the Blue Dog Café in Lafayette, alleging breaches of fiduciary duties and misappropriation of intellectual property.

Santillo answered the suit filed by GRR and filed an exception of no cause of action, contending GRR could not have a viable detrimental reliance claim in the absence of a signed, written settlement agreement. Santillo also filed reconventional and third-party demands alleging the filing of the detrimental reliance lawsuit by GRR was an abuse of process and a violation of Louisiana's Unfair Trade Practices Act (LUPTA), La.R.S. 51:1401, et seq. GRR was made defendant in reconvention. Jacques Rodrigue, Scott L. Sternberg, and Sternberg, Nacarri & White, LLC (hereafter "Sternberg," which represented Rodrigue in the litigation) were made third-party defendants. After the third-party demand was filed, Sternberg withdrew from representing Rodrigue and another attorney was hired.

Sternberg filed an exception of no cause of action with regard to the third-party demand. GRR filed an exception of no cause of action with regard to the reconventional demand. Rodrigue did not file any exception.

Those exceptions, including Santillo's earlier filed exception of no cause of action, were heard on June 25, 2018. The trial court denied Santillo's exception of no cause of action as to GRR's detrimental reliance claim. The trial court granted

both GRR's exception of no cause of action with regard to the reconventional demand and Sternberg's exception of no cause of action to the third-party demand.

A judgment was signed on July 3, 2018, granting the exceptions of no cause of action filed by GRR and Sternberg. Santillo filed a petition for appeal as to this judgment. The trial court, on its own motion, issued a rule to Santillo to show cause why the appeal should not be dismissed as having been taken from a partial judgment that had not been designated as immediately appealable, with respect to the dismissal of Santillo's reconventional demand, and from being taken from a judgment that lacked proper decretal language with respect to the dismissal of Santillo's third-party claims. On December 6, 2018, this court issued an opinion recalling the rule, in part, with respect to the dismissal of Santillo's reconventional demand against GRR, finding that portion of the judgment fell under La.Code Civ.P. art. 1915(A) and did not require a designation of finality. Thus, the appeal was suspended, and the matter remanded to the trial court with instructions to sign a judgment containing proper decretal language specifying that Santillo's third-party demands were dismissed only as to Sternberg, as the other third-party defendant did not file an exception. *GR Rest., LLC v. Suzanne Savoy Santillo, LLC*, 18-702 (La.App. 3 Cir. 12/6/18) (unpublished opinion). The trial court complied with our order to sign a judgment with proper decretal language and the appeal is now before this court again for a ruling on the merits of Santillo's appeal.

A judgment was also signed on July 6, 2018, denying the exception of no cause of action filed by Santillo with respect to the petition for detrimental reliance filed by GRR. Santillo timely filed a writ application to this court, docket number 18-637, seeking a review of the denial of the no cause of action exception. GRR filed an opposition to the writ application. The disposition of the writ application was held in abeyance until the procedural issues in the appeal of the July 3, 2018 judgment was resolved.

2

After the issuance of the rule in docket number 18-702, Santillo filed an ex parte motion to enroll Stephen Carleton as co-counsel of record. That order was signed by this court on October 1, 2018. GRR and Sternberg filed separate motions to disqualify Carleton, contending he was a fact witness and could not act as counsel of record pursuant to La.Rules Prof.Conduct, Rule 3.7(a), which provides an attorney cannot be both an advocate and a necessary witness at trial unless the testimony is related to an uncontested issue, is related to the nature and value of legal services rendered in the case, or the disqualification would be a substantial hardship to the client.

Carleton represented Santillo in the lawsuit filed against Stephen Santillo, Jacques Rodrigue and Andre Rodrigue. Carleton attested he was counsel of record for Santillo in that action and stated the allegations contained in the answer. In the opposition to the motion to disqualify, Santillo asserted Carleton was enrolled as co-counsel solely for the purposes of the appeal, as her main counsel was on extended vacation at the time (October of 2018). Santillo maintained Carleton would not serve as counsel at trial should her appeal be successful. However, Santillo did not address the fact that only Santillo's reconventional demands and third-party demands had been dismissed. Santillo's exception of no cause of action was denied, and the main demand brought by GRR is to proceed to trial.

On December 28, 2018, this court granted the writ application filed by Santillo for the limited purpose of ordering the consolidation of the writ application, docket number 18-637, with the appeal, docket number 18-702. We held as follows:

> **WRIT GRANTED.** In the above captioned writ application, Relators, Suzanne Savoy Santillo, LLC and Suzanne Savoy Santillo, seek review of the trial court's July 6, 2018 judgment, which denied Relators' exception of no cause of action. Relators have also filed an appeal from the trial court's July 3, 2018 judgment (which is identical to the July 6, 2018 judgment), granting the exception of no cause of action filed by GR Restaurants, LLC, with respect to Relators' reconventional demand and from the December 7, 2018 judgment granting the exceptions of no cause of action filed on behalf of Scott L. Sternberg and Sternberg,

3

Naccari & White, LLC, with respect to Relators' third-party demand. This court has noted that "although an interlocutory judgment is generally not appealable, an interlocutory judgment is subject to review on appeal when an appealable judgment has been rendered." *Moran v. Columb Foundation, Inc.*, 17-915, pp. 4-5 (La.App. 3 Cir. 1/31/18) (unreported opinion). In the interests of judicial economy and justice, this court grants this writ application for the limited purpose of ordering the consolidation of the writ application with the appeal lodged in this court under docket number 18-702.

Before this court presently is Santillo's writ application contending the trial court erred in denying its exception of no cause of action that GRR could not have a detrimental reliance claim in the absence of a signed, written settlement agreement. Also before us is Santillo's appeal asserting that the trial court erred in granting the exceptions of no cause of action as to Santillo's abuse of process claim and to Santillo's claims that GRR violated LUTPA.

## ANALYSIS

"The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading." *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234, 1235 (La.1993). Because the exception of no cause of action raises a question of law, it is reviewed on appeal de novo. *Peters v. Allen Parish Sch. Bd.*, 08-323 (La.App. 3 Cir. 11/5/08), 996 So.2d 1230. The burden of proof lies with the moving party, and the "pertinent question is whether, in the light most favorable to [the] plaintiff and with every doubt resolved in [the] plaintiff's behalf, the petition states any valid cause of action for relief." *Ramey v. DeCaire*, 03-1299, p. 8 (La. 3/19/04), 869 So.2d 114, 119. Dismissal is appropriate when the allegations in the petition clearly show that the plaintiff does not have a cause of action, or when the allegations in the petition clearly reveal the existence of an affirmative defense. *Rogers v. Ash Grove Cement Co.*, 34,934 (La.App. 2 Cir. 11/2/01), 799 So.2d 841, *writ denied*, 01-3187 (La. 2/8/02), 808 So.2d 351.

4

Pursuant to La.Code Civ.P. art. 931, no evidence may be admitted to support or oppose an exception of no cause of action. Thus, the court must accept the well-pleaded allegations of fact in the petition as true and determine whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Everything on Wheels*, 616 So.2d 1234. Conclusory allegations unsupported by facts are insufficient to support a cause of action. *Ramey*, 869 So.2d 114.

## I.    *Detrimental Reliance Lawsuit.*

Detrimental reliance is a doctrine designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. *Luther v. IOM Co., LLC*, 13-353 (La. 10/15/13), 130 So.3d 817. Detrimental reliance is codified under La.Civ.Code art. 1967, which states:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

The Louisiana Supreme Court in *Luther*, 130 So.3d at 825, explained detrimental reliance as follows:

> The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Suire v. Lafayette City-Parish Consolidated Government*, 2004-1459 (La.4/12/05), 907 So.2d 37, 59. Estoppels are not favored in our law; therefore, a party cannot avail himself of that doctrine if he fails to prove all essential elements of the plea. *See Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La.1975).

A review of the petition indicates GRR pled allegations that Santillo agreed to a settlement in principle, of which terms had been discussed and reduced to

5

writing in an email sent by counsel for Santillo. The following pleadings were set forth in GRR's petition:

4.
On or about November 23, 2017, MS. SANTILLO promised to representatives of GRR that she would agree to exchange her ownership interest in the Blue Dog Café restaurant in Lafayette in exchange for a profits interest in a new, re-formed entity which owned both Blue Dog Cafes in Lafayette and Lake Charles (collectively, the "Restaurants").

5.
MS. SANTILLO's promise was with the full knowledge and information that the November 23, 2017agreement included as a term the confection of a settlement of her 2016 lawsuit alleging breach of fiduciary duties against Blue Collar Enterprises (hereinafter, "Blue Collar"), which owns the Blue Dog Café in Lafayette, and would immediately induce GRR to expend substantial funds on the Restaurants to save both of them from immediate insolvency, and would begin the process of growing the Restaurants profitability.

21.
On November 23, 2017, via e-mail, counsel for MS. SANTILLO agreed to accept a 6% profits interest in exchange for settling the Santillo Action, and encompassing the form and terms of the November 14, 2017 letter (the "Agreement").

The above paragraphs sufficiently meet element one of detrimental reliance, a "representation by conduct or word." *Suire*, 907 So.2d at 59. Those allegations set forth the email where Ms. Santillo allegedly represented she would settle the Santillo Action and exchange an interest in an entity called "Blue Collar" for an interest in a new entity as part of an overall structure. The petition sets forth that Santillo was proposed those terms and represented through her counsel her agreement to accept. This amounts to a "representation by word or conduct" sufficient to establish a cause of action for detrimental reliance.

The second element in detrimental reliance is "justifiable reliance." A review of the petition establishes in Paragraphs 22 through 27 that GRR would be "immediately infus[ing] [money] into the Restaurants, relying on MS. SANTILLO's Agreement and representation that she would cooperate and exchange her ownership interest in Blue Collar for a profits interest" in the new entity. The petition further

6

alleged "MS. SANTILLO knew, or had been appropriately informed, that when agreeing to the proposal on November 23, 2017 that the Restaurants were sure to fail and be insolvent immediately unless someone advanced funds for the insolvent restaurants." In Paragraph 26 of the petition GRR alleged "[i]n reliance on MS. SANTILLO's Agreement, GRR infused nearly $200,000 into the Restaurants in order for them to remain solvent, and continues infusing money to date." Accordingly, we find the trial court did not err in finding GRR pled sufficient factual allegations to establish the second element, "justifiable reliance."

The third element to be proven to support a detrimental reliance claim is "a change in position to one's detriment because of the reliance." GRR's petition sets forth that it invested significant funds into the Restaurants in question as a result of Santillo's representations. Paragraph 31 of GRR's petition stated:

> GRR, justifiably relying on MS. SANTILLO's good faith promise to settle the Santillo Action and exchange her operating interest in a failing entity for a profits interest in well-capitalized one, has advanced significant capital, hired an independent consultant at the cost of $150,000 to reevaluate the offerings and streamline the business for both Restaurants, and hired a culinary director to revamp the menu of the Restaurants, expending significant funds.

Paragraph 33 specifically alleged the "significant infusion of capital made by GRR. . . would not have occurred without MS. SANTILLO's promise." A review of the petition establishes GRR pled factual allegations supporting the third element required for a detrimental reliance claim.

Accordingly, as the factual allegations pled in GRR's petition support all three elements of its detrimental reliance claim, we find the trial court correctly denied Santillo's exception of no cause of action.

We also note Santillo argued that a detrimental reliance claim must be based on a binding, written settlement agreement. However, La.Civ.Code art. 1967 plainly says "[a] party may be obligated by a promise." This court in *Morris v. People's Bank & Trust Co. of Natchitoches*, 580 So.2d 1029, 1036 (La.App. 3 Cir.), *writs*

7

*denied*, 588 So.2d 101, 102 (La.1991) stated that "La.[Civ.Code] art. 1967 does not require the existence of a formal, valid, or enforceable contract in order for detrimental reliance to occur." We further explained:

> [T]he basis of detrimental reliance is not the intent to be bound, since detrimental reliance is not really contractual in nature. It is based on the idea that a person should not harm another person by making promises that he will not keep. The question is not whether the promisor really intended to perform what he promised, rather it is whether the promise was made in such a manner that the promisor knew or should have known that the promisee would rely upon it, and if so, whether the promisee has in fact reasonably relied upon the promise and been damaged thereby. When the promisee can prove all of these elements[,] he has shown that the promisor has dealt him an injustice, and the court should be free to remedy the injustice suffered by the promisee.

*Id.*

Citing with approval our decision in *Morris*, this court in *Dugas v. Guillory*, 97-398, p. 11 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, 725, further explained:

> Since the enactment of La.Civ.Code art.1967, Louisiana courts have found detrimental reliance to occur despite the fact an onerous contract may lack a requisite formality, such as written execution in authentic form, provided the requirements of La.Civ.Code art.1967 are satisfied. *See Morris*, 580 So.2d 1029. Under La.Civ.Code art.1967, the only requirements necessary to maintain a detrimental reliance claim are the existence of a promise and an individual's reasonable reliance thereon that promise to his detriment. *Id*.

The Louisiana Supreme Court in *Suire*, 907 So.2d 37, 59, citing this court's statement in *Morris*, stated "to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract." It further noted:

> [T]he focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment. Therefore, we reject the City's argument that Suire's detrimental reliance claim should be dismissed as a matter of law because Suire cannot establish a valid, enforceable contract.

*Id* (citation omitted).

Thus, Santillo's position that a binding, written contract is required for a detrimental reliance claim is contrary to well-established law in this state. Accepting

8

the well-pleaded allegations of fact in the petition as true, we find GRR sufficiently pled facts to establish a cause of action for detrimental reliance. Accordingly, the trial court correctly denied Santillo's exception of no cause of action.

## II. *Abuse of Process.*

Santillo maintains the trial court erred in granting GRR and Sternberg's exception of no cause of action as to its abuse of process claim asserted in its reconventional demand.

In *Simon v. Perret*, 619 So.2d 155, 157 (La.App. 3 Cir.1993), this court noted "[a]buse of process is a cause of action originating from the common law and recognized under our jurisprudence as a compensable tort under [La.Civ.Code] art. 2315." In *Stark v. Eunice Superette, Inc.*, 457 So.2d 291, 295 (La.App. 3 Cir. 1984), *writ denied*, 461 So.2d 316 (La.1984) (citations omitted), we discussed the elements of abuse of process:

> The two essential elements of abuse of process are: (1) an ulterior purpose and (2) a wilful act in the use of the process not proper in regular conduct of the proceeding. It involves the misuse of a process already legally issued whereby a party attempts to obtain some result not proper under law.

In their third-party demand petition, Santillo set forth the following pertinent assertions to allege an abuse of process occurred:

> 38.
> Thereafter, on January 22, 2018, the Reconventional and Third-Pary Defendants filed the original petition in an abuse of the litigation process to attempt to coerce and intimidate, and/or punish Main Defendants and to attempt to force them to change their positions on settlement of the Santillo Action and the sale of Defendant Santillo LLC's Blue Collar Interest.

> 39.
> Reconventional and Third-Party Defendants made sure that Main Defendants and their Santillo Action Counsel were aware of the filing of this new retaliatory lawsuit on the date it was filed, January 22, 2018, by forwarding same on that date via email to Main Defendants' Santillo Action Counsel.

> 40.

Nine days later, on January 31, 2018. Sternberg, on behalf of his Reconventional and Third-Party Defendant clients, invited a lower settlement demand from Main Defendants in a letter to Main Defendants' Santillo Action Counsel. Thereby Sternberg demonstrated his and his clients' belief that this retaliatory litigation would have the desired coercive and intimidating effect on Main Defendants by forcing Main Defendants to lower its settlement demand without a counter-offer, which is exactly what they intended to achieve through this abusive lawsuit. and their Santillo Action Counsel were aware of the filing of this new retaliatory lawsuit on the date it was filed, January 22, 2018, by forwarding same on that date via email to Main Defendants' Santillo Action Counsel.

41.

The original petition is a sanctionable abuse of process designed to coerce, intimidate, punish and retaliate against Main Defendants for refusing to sign documents prepared by these same parties, which were markedly different from the proposed terms and conditions of the settlement and sale of November 14, 2017, which Main Defendants had simply agreed to consider when placed in writing.

After reviewing the third-party demand, we find the trial court did not err in finding Santillo's pleadings did not meet either of the essential elements of a claim for abuse of process. Santillo alleged GRR's and Sternberg's ulterior motive was to "coerce and intimidate, and/or punish . . . and to attempt to force them to change their positions on settlement." As GRR notes, Santillo argues primarily that the detrimental reliance lawsuit has no legal merit. However, that argument alone is not a valid basis for an abuse of process claim. If so, a simple denial of liability could always give rise to a cause of action for abuse of process. Moreover, we affirmed the trial court's ruling that GRR's petition stated a valid cause of action for detrimental reliance, which refutes Santillo's claim that the lawsuit has no merit.[1]

Santillo also did not plead any factual allegations alleging GRR and Sternberg committed an "improper use of process" in the filing of the detrimental reliance lawsuit. Improper use of process "refers to a failure to comply with the proper procedures or rules set out by law for conducting official actions." *Taylor v.*

---

[1] Santillo also argued the sending of a "courtesy copy" of GRR's petition to Santillo's counsel and Sternberg, on behalf of GRR, "invit[ing] a lower settlement demand" is proof of GRR's ulterior motive in filing its detrimental reliance lawsuit. We find no error in the trial court's finding that neither allegation is evidence of an ulterior motive.

*State*, 617 So.2d 1198, 1205-06 (La.App. 3 Cir. 1993), *writ denied*, 620 So.2d 875 (La.1993). This court in *Hebert v. La. Licensed Prof'l Vocational Rehab. Counselors*, 07-610, p. 9 (La.App. 3 Cir. 3/4/09), 4 So.3d 1002, 1009, *writs denied*, 09-750, 09-753 (La. 5/22/09), 9 So.3d 144, (citing Law of Torts, Volume I, § 4.9, Harper and James) (alterations in original), further stated:

> "0The action is not for the wrongful bringing of an action or prosecution, but for the improper use, or rather 'abuse' of process in connection therewith . . . [that is], for a perversion of legal process." *Id*. The wrong lies in the use to which the process is put. If it is in fact used to redress a legal wrong, the person who invoked the legal process cannot be said to have committed any tort, even if his motive was vicious or vindictive. However, when he seeks by the use of such process to "attain some collateral objective, outside the scope of the operation of the process employed," a tort arises.

As GRR and Sternberg note, there was no allegation made that any judicial rules or procedures were violated. Santillo's argument is based on its contention that the detrimental reliance lawsuit has no legal merit. Santillo bases that position on its belief that "promises cannot possibly form the basis of a detrimental reliance cause of action." As we set forth earlier, that is an erroneous statement of the law. This court in *Dugas v. Guillory*, 719 So.2d at 725, noted "[u]nder La.Civ.Code art. 1967, the only requirements necessary to maintain a detrimental reliance claim are the existence of a promise and an individual's reasonable reliance thereon that promise to his detriment." Similarly, the Louisiana Supreme Court, in *Suire*, 907 So.2d at 59, citing this court in *Morris v. People's Bank & Trust Co.*, 580 So.2d 1029 (La.App. 3 Cir.), *writ denied*, 588 So.2d 102 (La.1991), stated "to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract."

For the reasons set forth above, we find Santillo's reconventional demand did not include factual allegations supporting the claim that GRR and Sternberg committed an abuse of process. The trial court did not err in granting GRR and Sternberg's exception of no cause of action.

### III. LUTPA Claim.

Santillo next maintains the trial court erred in finding its reconventional demand failed to state an actionable claim for alleged violations of LUTPA. The Louisiana Supreme Court in *Quality Environmental Processes, Inc. v. I.P. Petroleum Co.*, 13-1582, 13-1588, 13-1703, p. 2 (La. 5/7/14), 144 So.3d 1011, 1025 (alterations in original), discussed LUTPA as follows:

> In LUTPA, the legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La.Rev.Stat. § 51:1405. Because of the broad sweep of this language, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis." Keith E. Andrews, Comment, *Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law*, 41 Loy. L.Rev. 759, 762 (1996) (hereinafter "Andrews"). This court has consistently held that in establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09-1633, p. 11 (La.4/23/10), 35 So.3d 1053, 1059. "[T]he range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. *Id.* at 11, 35 So.3d at 1059; Andrews, 41 Loy. L.Rev. at 763. Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA. *See, e.g., Cheramie Services*, 09-1633 at 12, 35 So.3d at 1060 ("[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA."); *Vermilion Hosp., Inc. v. Patout*, 05-82, p. 6 (La.App. 3 Cir. 6/8/05), 906 So.2d 688, 693 (noting that not all violations of the Louisiana Code of Ethics give rise to a cause of action under LUTPA and that persons aggrieved by such violations of the code of ethics are permitted to file a complaint with the Louisiana Board of Ethics or seek remedies under other statutes).

The trial court noted that Santillo's "abuse of process claim . . . and unfair trade practice [claim] go hand in hand." Similarly, Santillo asserted in brief that the same abuse of process allegations "were also sufficient to support [its] claims of LUTPA violations against [GRR and Sternberg] where these facts allege that [GRR and Sternberg] used this new lawsuit filed against [Santillo] for the ulterior purpose of causing [Santillo] 'intentional distress' 'and to incur unnecessary attorney's fees

and expenses.'" Finding Santillo failed to assert a viable abuse of process claim, the trial court correctly found the LUTPA claims were not viable.

GRR also notes the supreme court in *Quality Environmental,* 144 So.3d at 1026, stated LUTPA has a "narrow goal of protecting against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster healthy and fair business competition." The court went on to say the "However, the goals of LUTPA were not intended to ensure ethical and fair cooperation between attorneys litigating a case." *Id.* The court concluded "actions do not rise to the level of a violation of LUTPA, even [if] they may violate rules pertaining to discovery or ethical conduct. *See Thibaut, Thibaut, Garrett and Bacot v. Smith and Loveless, Inc.*, 576 So.2d 532, 537 (La.App. 1st Cir.1990) (LUTPA is an act of the legislature and cannot be applied to regulate or define the practice of law, including the conduct of attorneys)." *Id.* The court ruled such actions by an attorney "are more appropriately governed by our Code of Civil Procedure's discovery rules, which are meant to afford all parties to a lawsuit full and fair opportunities to obtain facts pertinent to the litigation." *Id.*

We find no merit in Santillo's argument that LUTPA applies to an attorney who files a petition for damages on behalf of his client. The filing of a detrimental reliance lawsuit does not offend "established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *See Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09-1633, p. 11 (La. 4/23/10), 35 So.3d 1053, 1059. In *Newton v. Brenan*, 14-423 (La. App. 5 Cir. 12/16/14), 166 So.3d 285, the defendant therein reconvened and filed a LUTPA claim asserting the plaintiff's lawsuit was merely retaliatory because the defendant had enforced a non-compete agreement between the parties. The court held the act of filing a lawsuit did not rise to the level of an unfair trade practice. The *Newton* court, citing *Quality Environmental*, stated as follows:

> while the lawsuit filed by [plaintiff] . . . was arguably the result of months of rancorous disputes between the parties, a review of the record reveals that [plaintiff] may arguably have some cognizable legal claims against [defendant] and his family members. [Plaintiff's] effort to exercise his juridical rights in connection with these claims is not an unfair trade practice under LUTPA.

*Id.* at 289. Similarly, we find GRR's attempt to exercise its juridical rights by filing its detrimental reliance lawsuit is not an unfair trade practice under LUTPA.

Lastly, Santillo argues that LUTPA claims cannot be dismissed by an exception of no cause of action because a "LUTPA violation is a subjective one for the fact finder's determination." We disagree. Obviously, on an exception of no cause of action, well-pleaded allegations of fact are accepted as true. Thus, there is no weighing of facts by the fact finder at that stage of the proceedings. The trial court's only inquiry is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the *facts alleged in the pleadings*. Further, this court has routinely affirmed the dismissal of LUTPA claims via exceptions of no cause of action. *See Washington Mut. Bank v. Monticello*, 07-1018 (La.App. 3 Cir. 2/6/08), 976 So.2d 251, 255, *writ denied*, 08-530 (La. 4/25/08), 978 So.2d 369; *Southern General Agency, Inc. v. Safeway Ins. Co. of Louisiana*, 99-1892 (La.App. 3 Cir. 6/7/00), 769 So.2d 606, *writ denied*, 00-2055 (La.10/6/00), 771 So.2d 89.

## DECREE

For the foregoing reasons, Santillo's writ application, docket number 18-637, is denied. The trial court did not err in denying Santillo's exception of no cause of action as to GRR's detrimental reliance lawsuit. In docket number 18-702, we affirm the trial court's granting of GRR and Sternberg's exceptions of no cause of action as to Santillo's abuse of process claim and to Santillo's claims that GRR violated LUTPA. All costs of these appeals are assessed to Suzanne Savoy Santillo, LLC and Suzanne Savoy Santillo.

**WRIT DENIED; AFFIRMED.**

14