# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 29, 2023

Lyle W. Cayce
Clerk

_____

No. 22-30772

_____

Carbon Six Barrels, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Proof Research, Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:22-CV-90

_____

Before Clement, Elrod, and Willett, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

Proof Research, Inc. and Carbon Six Barrels, LLC both manufacture carbon-fiber gun barrels. Proof entered the market first and obtained a trademark for the unique appearance of its barrels. When Proof found out that Carbon Six intended to begin manufacturing and selling similar-looking carbon-fiber gun barrels of its own, Proof responded with litigation. However, Proof did not file suit against Carbon Six, but rather against McGowen Precision Barrels, LLC, Carbon Six's sister company. McGowen then initiated separate proceedings to have Proof's trademark cancelled.

No. 22-30772

McGowen was ultimately successful, and Proof's trademark for its carbon-fiber gun barrels was cancelled in 2021. On February 9, 2022, Carbon Six filed this lawsuit against Proof for defamation and violation of the Louisiana Unfair Trade Practices Act stemming from Proof's efforts to register, renew, enforce, and defend its previously valid trademark. However, Carbon Six brought its claims after the one-year prescriptive period imposed by Louisiana law had run.[1] On Proof's motion to dismiss under Rule 12(b)(6), Carbon Six failed to convince the district court that any of its claims were timely. The district court also held that Carbon Six's LUTPA claim was legally deficient. We agree with the district court on all fronts. Despite advancing several arguments to save its claims from prescription, Carbon Six was simply too late. The district court's judgment is AFFIRMED.

I

Proof manufactures carbon-fiber gun barrels with a unique, mottled appearance. In 2013, Proof successfully registered this look as a "trade dress" trademark with the U.S. Patent and Trademark Office. Proof is a Delaware corporation with its principal place of business in Montana.

Carbon Six is a Louisiana limited liability company with its principal place of business in Louisiana. Proof learned that Carbon Six was planning to enter the market for carbon-fiber barrels and, in June 2016, sent a cease-and-desist letter to Carbon Six's Louisiana address. Proof's letter warned that Carbon Six's planned manufacture and sale of carbon-fiber barrels would violate Proof's trademark. Undeterred, Carbon Six began manufacturing its carbon-fiber barrels in early 2017. Carbon Six sourced its barrel blanks from its sister company—McGowen—which is solely owned by the same

---

[1] In Louisiana's civil law system, the prescriptive period is the equivalent of a statute of limitations.

No. 22-30772

Louisiana resident who solely owns Carbon Six.  Proof then sent a second cease-and-desist letter to Carbon Six's counsel in South Carolina.

Carbon Six did not cease its activities, and in December 2017, Proof filed a lawsuit for trademark infringement in the District of Montana.  However, for whatever reason, Proof named McGowen—and not Carbon Six—as the defendant.  McGowen immediately initiated a trademark-cancellation proceeding before the Trademark Trial and Appeal Board, which led to a stay of the federal litigation.  In 2018, while the cancellation proceeding was ongoing, Proof successfully applied to renew its trademark.  After nearly four years, in May 2021, the TTAB rendered an opinion in the cancellation proceeding cancelling Proof's trademark.

Carbon Six had won a proxy victory before the TTAB, but it was still not satisfied.  On February 9, 2022, Carbon Six brought the instant lawsuit against Proof in the Middle District of Louisiana, alleging that Proof: (1) fraudulently registered its trademark in violation of 15 U.S.C. § 1120; (2) violated the Louisiana Unfair Trade Practices Act by unfairly stymieing Carbon Six's entry into the market; and (3) defamed Carbon Six during the Montana litigation and the trademark-cancellation proceeding.  McGowen brought a similar lawsuit against Proof in the District of Montana for, *inter alia*, malicious prosecution.

Proof moved to dismiss the lawsuit filed by Carbon Six under Rule 12(b)(2) for lack of personal jurisdiction, or to at least transfer the case under 28 U.S.C. § 1404(a) to the District of Montana.  In the alternative, Proof moved to dismiss under Rule 12(b)(6) for failure to state a claim, arguing that all three of Carbon Six's claims were both untimely and legally insufficient.

The district court denied Proof's motion to dismiss for lack of personal jurisdiction and denied Proof's motion to transfer.  But the district court granted Proof's 12(b)(6) motion and dismissed Carbon Six's claims as

3

No. 22-30772

time-barred by Louisiana's one-year prescriptive period. The district court also held that in any event, Carbon Six's LUTPA claim was legally insufficient. Carbon Six appealed the district court's dismissal of the LUTPA and defamation claims but not the federal fraud claim.

This appeal raises two issues: (1) whether Carbon Six's LUTPA claim is timely and legally sufficient; and (2) whether Carbon Six's defamation claim is timely.[2]

## II

We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Henley v. Biloxi HMA, LLC*, 48 F.4th 350, 353 (5th Cir. 2022). We must take the plaintiff's allegations to be true and construe all inferences in the plaintiff's favor, affirming dismissal only when those allegations fail to "state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal based on a successful affirmative defense can be appropriate when that defense appears on the face of the complaint. *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017) (citation omitted).

## III

In its complaint, Carbon Six alleged that because Proof's trademark was never valid, Proof's trademark-enforcement actions violated LUTPA. The district court dismissed the claim as both untimely and legally insufficient. The district court was correct.

─────────────────────────

[2] The parties have also briefed the question of personal jurisdiction on appeal, with Proof arguing in the alternative that we should affirm the district court's dismissal on the ground that personal jurisdiction over Proof was lacking. Because we affirm the district court's dismissal on the grounds articulated within its well-reasoned opinion, we need not address the question of personal jurisdiction.

No. 22-30772

A.

LUTPA has a one-year prescriptive period.  La. Stat. Ann. § 51:1409 (2022).  And there is no doubt that the violations Carbon Six alleges occurred more than one year before Carbon Six filed suit on February 9, 2022.  In its complaint, Carbon Six alleges that Proof violated LUTPA by sending the two cease and desist letters (in 2016 and 2017); registering and renewing its trademark (in 2013 and 2018, respectively); filing the trademark litigation (in 2017); and accusing McGowen of trademark infringement (at the latest on November 21, 2020, when Proof filed its trial brief in the cancellation proceeding).

Even if each of these actions could individually give rise to liability under LUTPA, an action for any of them would have been untimely on February 9, 2022 and would therefore be prescribed under Louisiana law.  Carbon Six attempts to save these bases for LUTPA liability by relying on the continuing tort doctrine, which suspends prescription while the defendant's violations remain ongoing.  Under Carbon Six's theory, all of Proof's actions relating to its trademark continuously violated LUTPA because they were premised on the falsehood that Proof's trademark was legitimate.  In effect, Carbon Six argues that Proof had an ongoing duty to remedy this falsehood. The prescriptive period would thereby not have started to run until May 20, 2021, when the TTAB granted McGowan's petition to cancel Proof's trademark and the proceeding came to a close.

But Carbon Six immediately runs into a conceptual problem.  Louisiana law recognizes a distinction between an ongoing *action* and ongoing *damage* resulting from an action.  The Louisiana Supreme Court has stated that "the breach of a duty to right an initial wrong simply cannot be a continuing wrong that suspends the running of prescription, as that is the purpose of every lawsuit and the obligation of every tortfeasor." *Hogg v. Chevron USA,*

5

*Inc.*, 45 So. 3d 991, 1007 (La. 2010). As the district court noted, "Louisiana courts have long recognized that a continuing failure to remedy a tort is not a continuation of the underlying tortious action." *Carbon Six Barrels, LLC v. Proof Rsch., Inc.*, No. 22-CV-90-SDD-RLB, 2022 WL 16727127, at *9 (M.D. La. Nov. 4, 2022).

The leading cases from the Louisiana Supreme Court involve the actions of landowners that caused lasting damage to neighboring properties. In *Hogg*, underground storage tanks leaked large amounts of gasoline into neighboring land. 45 So. 3d at 995. And similarly, in *Crump v. Sabine River Authority*, canal construction caused a neighbor's bayou to dry up. 737 So. 2d 720, 723 (La. 1999). In both cases, the damages persisted long after the underlying actions ended. The neighboring property in *Hogg* still had gasoline contamination after the storage tanks were removed, and the neighboring property in *Crump* still had a dry bayou long after the canal construction was completed. In both cases, the Louisiana Supreme Court held that the mere failure to remediate continuing damage resulting from these past acts did not transform the underlying torts into continuing ones. *See Hogg*, 45 So. 3d at 1006 ("As in Crump [sic], the presence of the gasoline in the soil and subsurface is simply the continued ill effect of the original tortious incident . . . ."); *Crump*, 737 So. 2d at 728–29.

Carbon Six argues that *Hogg* and *Crump* are distinguishable because they addressed harm to real property. Carbon Six points instead to a series of older Louisiana courts of appeal cases arising in the context of unfair competition. In those cases, the courts held that when businesses violated statutorily imposed disclosure requirements, their continuing failure to disclose the required information constituted a continuing violation. *Capitol House Pres. Co. v. Perryman Consultants, Inc.*, 745 So. 2d 1194, 1197 (La. Ct. App. 1999); *Fox v. Dupree*, 633 So. 2d 612, 614 (La. Ct. App. 1993). Carbon Six points to several federal statutory provisions that Proof allegedly continued

to violate until its trademark was cancelled, suggesting that those provisions imposed a similar affirmative duty to disclose information. Carbon Six argues that the *Fox* and *Capitol House* line of cases, and not *Hogg* and *Crump*, apply here, where Proof allegedly lied in obtaining its trademark and then failed to remedy that lie during and after its attempts to enforce its trademark rights.

While true that *Hogg* and *Crump* arose in the context of damage to real property, we, like the district court, see no reason that the general principle those opinions announced should not apply here. The Louisiana Supreme Court made clear that "[t]he inquiry [as to a continuing tort] is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts." *Hogg*, 45 So. 3d at 1003. This principle is not confined to the real property context. *Id.* (stating that *Crump* differentiated between continuous and discontinuous action "in the context of discussing continuing torts in general"). The district court was correct in stating that the earlier cases Carbon Six cites "are generally inconsistent with the [Louisiana] Supreme Court's holding in *Hogg*," and that "Louisiana law does not support the broad proposition that LUTPA's prescriptive period is suspended as long as a perpetrator of fraud fails to correct his false statements." *Carbon Six Barrels*, 2022 WL 16727127, at *10. This proposition would transform nearly every business dispute into a continuing tort. *See Hogg*, 45 So. 3d at 1007.

The district court relied on a straightforward application of *Hogg* and *Crump* to reject Carbon Six's invocation of the continuing tort doctrine. We do the same here. All actions Carbon Six alleges Proof took were discrete rather than ongoing, and each began and ended more than a year before this lawsuit was filed. Carbon Six's LUTPA claim is therefore prescribed.

### B.

The district court also held that regardless of timing, Carbon Six could not recover under LUTPA for Proof's attempts to enforce its trademark rights. First, the lawsuit Proof filed was against McGowen rather than Carbon Six. Second, filing even a losing lawsuit, barring extreme circumstances, is not a LUTPA violation. Both points are correct.

As the district court held, "It is well settled that 'a sister corporation cannot sue on behalf of another sister corporation.'" *Carbon Six Barrels*, 2022 WL 16727127, at *8 (alteration accepted) (quoting *Construtodo, S.A. de C.V. v. Conficasa Holdings, Inc.*, No. H-12-3026, 2014 WL 427114, at *4 (S.D. Tex. Jan. 31, 2014)). Louisiana law goes so far as to generally prohibit even *members* of an LLC from suing on the company's behalf. *Wallace v. Aero-Premier Jet Ctr., LLC*, No. 10–1136, 2010 WL 3081370, at *2 (E.D. La. Aug. 5, 2010) (citing La. Stat. Ann. § 12:1329 (2022)). Resulting from either choice or mistake, Proof sued only McGowen in the Montana trademark litigation. Carbon Six was not a target of the lawsuit it alleges constituted a LUTPA violation. Carbon Six and McGowen are distinct entities. And regardless of whether the same individual is the sole member of each company, Carbon Six simply cannot sue on McGowen's behalf.

Even if Carbon Six could do so, Proof's attempt to enforce a later-invalidated trademark does not violate LUTPA. The Louisiana Supreme Court has emphasized that "[t]he range of prohibited practices under LUTPA is extremely narrow." *Quality Env't Processes, Inc. v. I.P. Petrol. Co.*, 144 So. 3d 1011, 1025 (La. 2014) (citation omitted). "[I]n establishing a LUTPA claim, a plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* (internal quotation marks and citation omitted).

The act of filing a lawsuit is usually not enough to support a LUTPA claim. One Louisiana court of appeal has rejected the "argument that LUTPA applies to an attorney who files a petition for damages on behalf of his client." *GR Rests., LLC v. Suzanne Savoy Santillo, LLC*, 275 So. 3d 50, 61 (La. Ct. App. 2019).[3] And another court of appeal held that initiating even a potentially retaliatory lawsuit was not an unfair trade practice under LUTPA, even when it seemed to be "the result of months of rancorous disputes between the parties," because the plaintiff "may *arguably* have some cognizable legal claims." *Newton v. Brenan*, 166 So. 3d 285, 289 (La. Ct. App. 2014) (emphasis added).

This is not to say that abusive litigation can never give rise to a LUTPA claim. *See, e.g.*, *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 151 So. 3d 670, 678 (La. Ct. App. 2014). However, the *Prime Insurance Co.* court made clear that it was the *continuation* of the lawsuit in that case, despite years of evidence that the claims were meritless, which violated LUTPA. *Id.* The court observed that seven years into the lawsuit, following six amendments to the petition, the defendant "presented an overwhelming amount of evidence that established, as already known to [one of the plaintiffs], that no plaintiff had ever been aggrieved and/or damaged." *Id.* at 675.

Proof's conduct falls short of the types of egregious behavior necessary to support a LUTPA claim. Based on the existence of a registered trademark, Proof filed suit against a company it believed was producing barrels that would arguably be covered by the trademark. And it is far from obvious

---

[3] Carbon Six attempts to distinguish *GR Restaurants* by pointing out the opinion's reference to LUTPA's applicability to "an attorney." This mischaracterizes the case. The attorney in *GR Restaurants* was not the defendant. And he acted "on behalf of his client." *GR Rests.*, 275 So. 3d at 61. The facts are no different here. Proof filed its lawsuit in the Montana trademark litigation through its attorney.

No. 22-30772

that Proof's eventually terminated trademark was clearly invalid from the start. It took the TTAB nearly four years to consider and resolve the cancellation proceeding, which it did in a 49-page, highly technical opinion. The TTAB held that "Respondent's [that is, Proof's] trade dress is functional because the outer layer of Respondent's carbon fiber composite rifle barrels, helically wrapped at an angle of +\-45° and comprising 8% to 18% of the radial thickness of the composite is 'essential to the use or purpose' and 'affects the . . . quality' of the barrel design disclosed in the '117 Patent." This is not the kind of easy determination like that made in *Prime Insurance Co.*, where the court held that the plaintiffs knew for years that not a single one of them had suffered an injury. *Prime Ins. Co.*, 151 So. 3d at 675. When Proof initiated the trademark litigation, it was at least arguable that it possessed cognizable claims.[4] *Newton*, 166 So. 3d at 289.

IV

Finally, we address Carbon Six's defamation claim. Defamation claims in Louisiana, like LUTPA claims, are subject to a one-year prescriptive period. *Lyons v. Knight*, 65 So. 3d 257, 260 (La. Ct. App. 2011) (citing La. Civ. Code Ann. art. 3492 (1992)). And like its LUTPA claim, Carbon Six's defamation claim is untimely.

The analysis is straightforward. The last allegedly defamatory remark Proof made was in filing its trial brief in the cancellation proceeding before

---

[4] We are not the only court to conclude as much. On August 24, 2023, the District Court for the District of Montana dismissed McGowen's malicious prosecution claim against Proof, granting summary judgment in Proof's favor. The court held that Proof had a "reasonable belief" that its trademark was being infringed, and therefore had "probable cause" to file its lawsuit. *McGowen Precision Barrels, LLC v. Proof Rsrch., Inc.*, No. 9:22-cv-39, 2023 WL 5459953 at *5 (D. Mont. Aug. 24, 2023).

the TTAB on November 21, 2020. Carbon Six filed the instant lawsuit on February 9, 2022, more than a year later.

Carbon Six, however, attempts to avoid this conclusion by arguing that the prescriptive period should have been suspended until either the TTAB rendered its opinion in the cancellation proceeding—on May 20, 2021—or when the Montana trademark litigation was dismissed—on August 3, 2021. Carbon Six cites Louisiana cases holding that "an action for defamation arising out of allegations made in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated." *Simpson v. Perry*, 887 So. 2d 14, 16 (La. Ct. App. 2004). Carbon Six argues that, from this rule, it "necessarily follows" that the prescriptive period is suspended until that litigation ends. *Lemke v. Keiser & Auzenne, LLC*, 922 So. 2d 690, 692–93 (La. Ct. App. 2006).

The district court rejected this argument, noting that *Simpson*—one of the cases on which Carbon Six relied—directly stated that this exception only applies to allegations made *against a party* to those proceedings. Because Carbon Six was not a party to either of the proceedings it cited, it could not invoke the exception.

From our examination of Louisiana law, it appears that the district court may have stated the rule too strictly. That is, party status may not *always* be a necessary condition to suspend the prescriptive period. Some Louisiana cases do suggest that party status is necessary. *E.g.*, *Lescale v. Joseph Schwartz Co.*, 40 So. 708, 712 (La. 1905) (a rule preventing a cause of action for malicious prosecution from accruing "could not be applied in the instant case, where the plaintiff was not a party to the suit wherein the allegations complained of were made"); *Simpson*, 887 So. 2d at 16. But there are others that suggest otherwise. *E.g.*, *Carnes v. Atkins Bros. Co.*, 48 So. 572, 574 (La. 1909) (discussing suspension of the prescriptive period in general terms

without reference to party status); *Lemke*, 922 So. 2d at 693. In *Lemke*, the court articulated the test as whether "the offending comments arise during litigation and out of the same set of operational facts as those set forth in the underlying claim," and whether the comments are "material to the ongoing litigation so that it is necessary for the suit to be finalized before the cause of action can arise." 922 So. 2d at 693. Understandably, Carbon Six argues for the application of the test laid out in *Lemke*.

We need not weigh in on which of these theories should apply here. Under either rationale, the prescriptive period on Carbon Six's defamation claim was not suspended. First, as the district court pointed out, Carbon Six was not a party to the Montana trademark litigation nor the cancellation proceeding before the TTAB. *Lescale*, 40 So. at 712 (party status is necessary to suspend the prescriptive period). Although Proof may have named Carbon Six in its briefing, Proof never named Carbon Six *as a defendant*.

Second, Proof's allegedly defamatory comments do not arise out of the same set of operational facts as those set forth in either the Montana trademark litigation nor the cancellation proceeding and are material to neither. *Lemke*, 922 So. 2d at 693. Proof's underlying trademark-infringement claim was against McGowen. Whether Carbon Six infringed on any of Proof's then-existing trademarks was not an element that needed to be proven in the suit, and any allegation that Carbon Six did so was completely tangential to that litigation. Quite simply, Carbon Six was never at risk of being found liable for infringement and could not have been held to a judgment in favor of Proof. Carbon Six therefore cannot claim that the question of any alleged infringement was "material to the ongoing litigation." The same is even more true for the cancellation proceeding. There, any question of Carbon Six's infringement of Proof's trademark had no bearing on the validity of that trademark.

No. 22-30772

Carbon Six was therefore free to bring a defamation claim against Proof at any point while the two proceedings were ongoing. It cannot now claim that the prescriptive period was suspended.

\*     \*     \*

The district court correctly held that Carbon Six's claims were untimely, and that its LUTPA claim was also legally deficient. Accordingly, we AFFIRM.